STATE OF NORTH CAROLINA v. LEONARD AUSTIN AND ROYCE STAMEY

No. 9

(Filed 11 March 1970)

**1. Criminal Law § 66— pretrial lineup — in-court identification — new trial granted by Court of Appeals — voir dire hearing — remarks of trial court**

Where defendants were granted a new trial by the Court of Appeals for error in the admission of robbery victim's in-court identification of defendants without a voir dire finding that his identification of them had an independent origin and did not result from an illegal pretrial lineup, the trial court did not err in stating, in the presence of the witness but in the absence of the jury, that a voir dire hearing would be conducted in compliance with the decision of the Court of Appeals, and in reading in the presence of the witness an excerpt from the decision of the Court of Appeals that "It may well be that . . . the identity of both defendants was based on factors complete and independent of the line-up identity," defendant's contention that the witness' voir dire testimony was influenced by the court's statements being mere speculation.

**2. Constitutional Law § 32; Criminal Law § 66— pretrial lineup — right to counsel**

Defendant had no constitutional right to the presence of counsel at a lineup conducted in May 1967, since the rules established by *U. S. v. Wade*, 388 U.S. 218, and *Gilbert v. California*, 388 U.S. 263, affect only cases involving lineups for identification purposes conducted after June 12, 1967.

**3. Constitutional Law § 30; Criminal Law § 66— pretrial lineup — due process — totality of circumstances — suggestive procedures**

Principles of Due Process with respect to lineups, guaranteed by the Fourteenth Amendment, were not offended where there is nothing in the record to indicate that the lineup was conducted in such fashion as to offend fundamental standards of decency, fairness and justice, and the total circumstances surrounding the lineup do not reveal procedures unnecessarily suggestive and conducive to irreparable mistaken identification.

**4. Criminal Law § 66— pretrial lineup — in-court identification — independent origin — sufficiency of State's evidence**

In this armed robbery prosecution, the State's evidence on voir dire was clear and convincing that the robbery victim's in-court identification of defendant was based upon his observation of defendant at the time of the robbery and was in no way related to a pretrial lineup, where the evidence discloses that the victim observed defendant from 8 to 10 minutes during the robbery, that defendant was undisguised and the victim had full opportunity to form a mental picture of his facial features and identifying characteristics, that defendant fits the description the victim gave officers following the robbery, that the victim identified defendant the first and every time he saw him, that he identified defendant by a photograph that favors him very closely, and that the witness viewed the lineup for only a few seconds.

**5. Robbery § 4— armed robbery — sufficiency of evidence**

> In this armed robbery prosecution, the State's evidence, including the robbery victim's identification of defendant as one of the perpetrators of the robbery, was sufficient to withstand defendant's motion for nonsuit and carry the case to the jury.

APPEAL by defendant Leonard Austin from decision of the Court of Appeals upholding judgment of *Copeland, S.J.,* at the May 1969 Session, BURKE Superior Court.

Defendants were charged in separate bills with the armed robbery of M. A. Brinkley on 25 February 1967. They were first tried and convicted at the March 1968 Session, Burke Superior Court. A new trial was awarded by the Court of Appeals (3 N.C. App. 200, 164 S.E. 2d 547) for error in admission of Brinkley's in-court identification of defendants without a voir dire finding that his identification of them had an independent origin and did not result from a pretrial lineup at which defendants were not represented by counsel and at a time when their right to counsel had not been waived.

At the second trial from which this appeal is taken a voir dire was conducted in the absence of the jury. M. A. Brinkley testified, in summary, that at approximately 8:15 a.m. on the morning of 25 February 1967 a tall man entered his store on West Main Street in Valdese and asked for a load of insulation. When he turned to pick up the insulation, the man put a gun in his ribs and said, "Do as I say, and I won't kill you." Brinkley replied, "You couldn't mean that could you? You have been a customer of mine, you have been in this store." The man said, "No, I have never been in your store before." He had on dark glasses but Brinkley could see the expression change in his face, "looked like it took him by surprise when I said that." At that point a short man entered the store. He was bareheaded, wore a red jacket, and had a gun in his right hand and a roll of masking tape in the other. He came across the counter and placed the gun at Brinkley's head. The tall man caught Brinkley by the shoulder and directed him to the rear of the building. He opened the door leading to the basement and ordered Brinkley down the stairs. At the foot of the stairs the robbers taped his hands behind him and tied his feet to the banister post. All this time, perhaps five minutes, they were around and in front of Brinkley and he had a good view of them. "There was no question in my mind as to a mental picture of the two. I observed them perhaps 8 to 10 minutes from the time they came in and had the conversation with me, and took me downstairs, until they went upstairs." Neither had any disguise over his face. The taller one had on sunglasses and was wear-

ing a dark hat, a tie and a trench coat. When they finished tying Brinkley, the tall one said to the short one, "get his billfold." The short one pulled a billfold containing $191.00 in cash from Brinkley's pocket and handed it to the tall one.

Brinkley further testified that the robbers went upstairs and he heard their footsteps leading to the office and heard the squeaky door open as they entered it. Then he heard the front door open and someone enter the store. Shortly thereafter he heard someone leave by the back door. Officers were called by the customer who had entered and sensed that something was wrong; Brinkley was found and released; and a check of his safe revealed approximately $140.00 missing in addition to the $191.00 taken with his wallet.

On cross examination, Brinkley stated that an SBI agent brought him five to ten photographs about two weeks after the robbery. From these pictures he picked out the tall robber, identified as Stamey. About ten days later the SBI agent brought him more pictures, and from those he picked both of the robbers, later identified by him as defendants Stamey and Austin. In May, 1967 following their arrest, Brinkley observed defendants in a police lineup at the Burke County Sheriff's Department and recognized both of them. There were seven people in the lineup. "I did not point them out to anybody and there were no words exchanged in the lineup. . . . I had already made up my mind as to the looks of them from the pictures. The whole time I had a mental picture of the two because they were with me some 10 or 15 minutes in tying me up. In the lineup I should say about half of them were short and half of them were tall, but I don't recall how they were dressed. I only looked at their faces, because I have a mental picture of their faces and not how they were dressed. The expressions on their face has stuck with me all this time. . . ."

On further cross examination by Austin's counsel, Mr. Brinkley stated that he picked Stamey's picture from both the first and second group of pictures. He stated further that the solicitor "did not discuss that he was going to have to establish my identification of these defendants without regard to the lineup. I haven't discussed the lineup with anybody. All I knew was what I read in the papers from the Appeals Court."

Royce Stamey's father testified on the voir dire as a witness for his son. He stated that his son had accompanied him to Mr. Brinkley's store on an average of three or four times a year until three or four years prior to the robbery and that Mr. Brinkley knew his son. "For some 10 years, I stopped at Mr. Brinkley's store about 2 or

3 times a year when my son was with me, and Mr. Brinkley was there every time I was in there. . . . My son was in prison occasionally but I don't have a record of how long."

Fred Goins, a witness for defendant Stamey, testified on voir dire that he was in Brinkley's store with Royce Stamey several times between 1953 and 1957; that Stamey bought a .410 shotgun from Mr. Brinkley on one of those occasions.

Defendant Austin offered no evidence on voir dire.

Upon the foregoing evidence the court found that identification of defendants by the prosecuting witness was based entirely on his recognition — his mental picture — of them at the time they robbed him and did not originate with the lineup; the lineup had nothing to do with it.

The jury was thereupon recalled to the jury box and on direct examination Mr. Brinkley testified substantially in accord with his testimony on voir dire. The witness then pointed out Royce Stamey as the tall man and Leonard Austin as the short man who had robbed him on 25 February 1967.

On cross examination by Austin's counsel he stated that he was given fifteen to twenty pictures and instructed to look them over. "I didn't know any of the names, but I recognized one of the faces . . . as being the taller of the two that came in the store and held the gun on me. I don't think he had a picture of Austin. . . . I picked out a picture and I said 'The shorter one looks similar to this one.' . . . He brought some more pictures, and . . . I picked out the taller of the two. . . . I said 'This picture looks like the second fellow, the shorter one. . . . I don't believe it is him . . . it favors him very closely.' . . . I did not pick Leonard Austin out by the pictures, but I picked out someone that looked like him, and I said that one looks like the person."

On further cross examination by Stamey's counsel, Brinkley said: "I picked out the picture that resembled Austin to give them a clue as to his description."

Stamey offered no evidence. Austin offered only the testimony of Aline Marchetti — the customer who entered the store while the robbery was in progress and Mr. Brinkley was tied up in the basement. She described the robbers as "the tall one" and "the shorter one." She said the tall one stated that "Mr. Brinkley has stepped out on a coffee break." Then both men walked casually to the rear of the store and left by the back door. At that moment she realized some-

thing was wrong and went next door to get help. She was unable to identify the robbers because she saw them only "for a moment."

The jury found both defendants guilty of armed robbery and each was sentenced to prison for a term of twenty to thirty years. The judgment was upheld by the Court of Appeals, 6 N.C. App. 517, 170 S.E. 2d 497, and defendant Austin appealed to this Court assigning errors noted in the opinion.

*Ted S. Douglas, Attorney for defendant appellant.*

*Robert Morgan, Attorney General; Bernard A. Harrell, Assistant Attorney General.*

HUSKINS, J.

Appellant brings forward the following assignments, to wit: (1) The court erred in reading to the prosecuting witness prior to his examination on voir dire an excerpt from the decision of the Court of Appeals relative to the lineup; (2) the court erred in permitting the prosecuting witness to make an in-court identification of defendant Austin because it was based on an illegal lineup identification when defendant had not waived and was not represented by counsel; and (3) the court erred in failing to grant Austin's motion for judgment of nonsuit. These assignments will be considered in the order named.

[1] Preceding the voir dire, the trial judge dictated the following statement into the record in the absence of the jury but in the presence of the prosecuting witness: "Let the record show at this time by and with the agreement of counsel for both defendants and the solicitor for the State, upon the swearing of the witness M. A. Brinkley, it is agreed that a Voir Dire hearing would be conducted by the Court in compliance with mandate of the Court of Appeals language. It may well be that the witnesses in court, the identity of both defendants was based on factors complete and independent of the line-up identity. So at this time the Court will be conducting this hearing for the purpose indicated in the opinion of the Court of Appeals in the absence of the jury." (The language referred to appears in 3 N.C. App. 200 at 203, as follows: "It may well be that the witness's in-court identification of both defendants was based on factors completely independent of the lineup identification.")

Defendant Austin assigns this as error, suggests that it amounted to an expression of opinion on the part of the judge, and argues that it in effect told the witness Brinkley the significance of the pretrial lineup and influenced him to attach only minor importance to it. Defendant's argument is not persuasive. The opinion of the Court of

Appeals is not a secret document the contents and significance of which are reserved only for the eyes of defendant and his counsel. No reason occurs to us, and none has been cited, why the victim should not be apprised of the purpose of the voir dire examination and the significance of the lineup. Defendant and his counsel were cognizant of these matters. Why should the same knowledge be kept from the witness? Is it suggested that only the ignorant swear truthfully and that those who know the purpose and significance of the questions propounded are more apt to commit perjury than those who do not? If this be a valid premise, then knowledge is a vice and ignorance a virtue. But be that as it may, the statement of the court was hardly sufficient to apprise the witness of anything. It was entirely harmless. This assignment is mere speculation, supported only by surmise and conjecture. It is without merit and is overruled.

With respect to the lineup, the following language from *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345, is appropriate:

"The rules established for in-custody lineup identification by *United States v. Wade,* 388 U.S. 218, 18 L. ed 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California,* 388 U.S. 263, 18 L. ed 2d 1178, 87 S. Ct. 1951 (both decided June 12, 1967), include the constitutional right to the presence of counsel at the lineup and, when counsel is not present, (1) render inadmissible the testimony of witnesses that they had identified the accused at the lineup, and (2) render inadmissible the in-court identification of the accused by a lineup witness unless it is first determined on voir dire that the in-court identification is of independent origin and thus not tainted by the illegal lineup. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581. *Wade* and *Gilbert* do not apply retroactively, however, and affect only cases involving lineups for identification purposes conducted after June 12, 1967. *Stovall v. Denno,* 388 U.S. 293, 18 L. ed 2d 1199, 87 S. Ct. 1967."

[2, 3] The lineup in this case was conducted in May 1967. Hence the rules fashioned by *Wade* and *Gilbert* do not apply, and the appellant here had no constitutional right to the presence of counsel at the lineup. *Stovall v. Denno, supra.* Furthermore, there is nothing in this record to indicate, and defendant does not contend, that the lineup was conducted in such fashion as to offend fundamental standards of decency, fairness and justice. His only complaint is the absence of counsel. Nor do the total circumstances surrounding the lineup reveal procedures unnecessarily suggestive and conducive to irreparable mistaken identification. Thus the principles of Due

Process with respect to lineups, guaranteed by the Fourteenth Amendment, have not been offended. *Rochin v. California,* 342 U.S. 165, 96 L. ed 183, 72 S. Ct. 205, 25 A.L.R. 2d 1396; *Foster v. California,* 394 U.S. 440, 22 L. ed 2d 402, 89 S. Ct. 1127; *State v. Rogers, supra; State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593.

[4]    Even if *Wade* and *Gilbert* applied in this case, the evidence supports the findings of the trial judge on voir dire that identification of the defendants by the prosecuting witness was based entirely on his mental picture of them at the time of the robbery and was in no way related to the lineup. This evidence discloses that the prosecuting witness had observed both defendants from eight to ten minutes during the robbery; that defendant Austin was undisguised and the victim had full opportunity to form a mental picture of his facial features and identifying characteristics; that Austin's actual description fits the description Brinkley gave the officers following the robbery; that Brinkley identified both defendants the first time and every time he saw them; and that he identified Austin by a photograph "that favors him very closely." It is quite apparent from Brinkley's testimony on voir dire, and before the jury as well, that he had in his mind a fixed image of these defendants and had formed it from observations at the time of the robbery. "The expressions on their face has stuck with me all this time. . . . I did not pick Leonard Austin out by the pictures, but I picked out someone that looked like him . . . to give them a clue as to his description. . . . I picked him out on the basis of my mental picture." Furthermore, according to the record, the witness viewed the lineup for only a few seconds. Its imprint upon Brinkley's mind, therefore, must have been minimal and served only to verify the mental picture formed at the time of the robbery. In our view, the State's evidence is clear and convincing that Brinkley's in-court identification was based upon observation of defendants at the time of the robbery and not on observations at the time of the lineup. Compare *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353, and *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225.

In light of these principles, it follows that the victim's in-court identification of appellant was properly admitted. His assignment of error based on its admission has no merit and is therefore overruled.

[5]    There was ample evidence to withstand the motion for nonsuit and carry the case to the jury. Appellant's third assignment is overruled.

The decision of the Court of Appeals upholding the judgment is

Affirmed.