STATE OF NORTH CAROLINA v. ROBERT (BOBBY) SMITH

No. 36

(Filed 14 April 1971)

1. Criminal Law § 66; Constitutional Law § 30— lineup procedures — suggestiveness and mistaken identification — due process

Lineup and confrontation procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violate due process and are constitutionally unacceptable.

2. **Criminal Law § 66— identification of defendant — confrontation in jail cell — absence of counsel — unnecessary suggestiveness**

The procedure by which the victim of an attempted armed robbery identified the defendant in his jail cell was unnecessarily suggestive and was a violation of due process, where (1) defendant had not been advised of his constitutional rights, including the right to counsel; (2) no counsel was present at the identification; (3) the defendant was wearing clothing similar to that worn by the alleged robber, whereas the two other prisoners in the cell were dressed differently; (4) the defendant was a young man, whereas one of the prisoners was middle-aged and the other was much larger and heavier than defendant.

3. **Criminal Law §§ 66, 169— admission of erroneous identification testimony — harmless error**

The admission of testimony relating to the prosecuting witness' unlawful identification of defendant in his jail cell was harmless error in this attempted armed robbery prosecution, where there was other and overwhelming evidence that the prosecuting witness' in-court identification of defendant was based on the witness' observations prior to and during the crime.

APPEAL by defendant from *McConnell, J.,* 13 April 1970 Criminal Session, ANSON Superior Court.

Defendant was tried on a bill of indictment, proper in form, charging defendant with attempted armed robbery of Fred Cook on 9 October 1969, a violation of G.S. 14-87.

After the jury was impaneled and prior to the introduction of evidence before the jury, defendant moved to suppress the testimony of Fred Cook purporting to identify defendant as the person who attempted to rob him. As grounds for the motion defendant asserts that Cook's identification testimony is based on an illegal confrontation for identification purposes in the Anson County Jail at a time when defendant had not been warned of his constitutional rights and in the absence of defense counsel. Pursuant to the motion a *voir dire* was conducted by the court in the absence of the jury.

Fred Cook testified on *voir dire* that on 9 October 1969 he was operating the Star-Flite Service Station on Highway 52 north of Wadesboro in Anson County. On that date, shortly after 7 p.m., the defendant came to the service station and stayed in the rest room about fifteen minutes. The station was well lighted and defendant passed within fifteen feet of him at that time. After leaving the rest room, defendant went to the edge of the highway forty to fifty feet away and remained there for

approximately an hour as if trying to catch a ride back to town. Meanwhile, about 8 p.m., Cook prepared to close his station, read his gas pumps, looked toward the highway and observed that defendant was gone. Cook had two buildings which he locked and, as he turned to leave, heard someone say: "This is a holdup." An outside night light was mounted over the building and the premises were well lighted by it and by the big lights over the gas pumps. Cook turned to see who had spoken and defendant had a pistol with a shiny barrel pointed right in his face. Defendant's face was not covered. He was within five feet of Cook and plainly visible under the overhead light. As Cook turned to face him defendant pulled the trigger and the pistol snapped but did not fire. Although he had no weapon in his pocket, Cook went toward his pockets with his hands and defendant whirled, ran behind the building, and across a small branch. Cook followed and defendant shot four times but did not hit him. At that time defendant was about seventy-five yards away.

In response to a telephone call, Officers Hieleg and Allen arrived at the service station within forty minutes. Cook told them what had happened, described defendant as a young colored male wearing a white T-shirt and a pair of dark gray pants. He told the officers that his assailant had been around his service station the entire week; that on Monday night, the 6th of October, defendant and two other boys came to the station and defendant complained to Cook that they had put money in one of the vending machines which didn't pay off; that defendant was at the station for an hour on that occasion and Cook had observed him and conversed with him although he did not know his name; that again on Tuesday and Wednesday before the attempted robbery on Thursday, his assailant had returned to the station "and would hang around out there. I had an opportunity to see him each day he was there."

Cook further stated on the *voir dire* that shortly after midnight on the night of the attempted robbery the officers called and informed him the robber had been caught, that his name was Bobby Smith, and that he was in jail. Cook thereupon went to the county jail at Wadesboro, where he was informed by the officers that Judge Mills had been called and that a lawyer would have to be appointed for defendant before they could let Cook see him.

State v. Smith

Although the record is silent as to the appointment of counsel, Attorney F. O'Neil Jones was apparently appointed by Judge Mills to represent defendant and went to the jail and courthouse that night. In this connection, Cook testified as follows: "On the night in question I saw Mr. Jones at the jail house. They had called Mr. Jones and appointed him as the lawyer for Bobby Smith. When he arrived there that night he indicated that we were not going to have a lineup. I heard him discuss this with Deputy Sheriff Ralph Allen. Mr. Previtte, the night jailer, was not there at that time. Mr. Jones indicated to the arresting officers that he was not prepared to have a lineup that evening, and that is my best recollection."

Fred Cook further stated that after Attorney Jones left, "they came over in the courthouse to fix up the warrant for him. So while they went over fixing up the warrant, the night man came over there at the jail and asked me did I want to see him. I told him, 'Yes, . . . I want to see who I'm taking out a warrant for, see if he's the right one.'" Cook was thereupon admitted to the jail, saw three colored males in the same cell, and recognized defendant Bobby Smith as the man who had attempted to rob him earlier that night. "I did not go to the cell to identify this person. I simply went to see if the one who had robbed me had been taken into custody. When I saw him, it was my conclusion that that was the one that tried to rob me out at the station. I see the person now who tried to rob me on October 9, 1969 and he is sitting right there. . . . If I had not seen him in jail, I would know that he was the one."

Defendant did not testify on the *voir dire* but called Jailer Eddie Previtte as a witness. The jailer testified that he came on duty at 12 midnight on the night of October 9, 1969; that he saw Attorney Jones that night but did not remember hearing Mr. Jones say anything about "no lineup"; that after he saw Mr. Jones he saw Fred Cook and asked him if he'd like to see Bobby Smith; that Cook replied "yes, he would, after he stayed up there that long"; that it was about 2 a.m., getting late, and he permitted Fred Cook to enter the cell block and view the defendant; "I just took him to the door area where Bobby Smith was, and he looked and left"; that Attorney Jones was not present and did not see what happened at the time he took Cook around to the jail; that he did not point out Bobby Smith to Cook but simply told him if he wanted to see him he could go around to the cell; that T. J. Crowder and Jimmy Preston were the other two prisoners

in the cell with defendant that night; that Crowder is a middle-aged Negro man, obviously over thirty, and Jimmy Preston, while about the same age as defendant, is substantially larger.

James Preston testified that he was in Anson County Jail on the evening of 9 October 1969 and was in the same cell with Bobby Smith and T. J. Crowder; that Bobby Smith was wearing a white T-shirt and dark gray pants while he and Crowder had on no shirt at all; that the jailer brought Fred Cook in there "and told him to go around and see is that the one"; that Cook first pointed at him and the jailer shook his head and Cook then went to Bobby Smith. This witness said he was in jail for burglary and had previously escaped from jail.

Fred Cook was recalled by the State and stated that the jailer couldn't even see him after he entered the cell block; that he "went around the runaway and I couldn't even see the jailer at all. He did not shake his head at me."

Upon the foregoing evidence, the judge found as a fact that Fred Cook had observed Bobby Smith on a number of occasions during the week while Smith was loitering around the Star-Flite Service Station and further observed him for more than an hour on the night of the attempted robbery; that Fred Cook's identification of Bobby Smith was based entirely on his mental picture of defendant at the time of the robbery and was in nowise tainted by the fact that he saw him in the Anson County Jail. Upon those findings, the court concluded that Cook's in-court identification of defendant was competent. Defendant's motion to suppress the evidence was thereupon denied. Fred Cook then took the witness stand and testified before the jury substantially in accord with his *voir dire* testimony. Defendant offered no evidence before the jury.

Following arguments of counsel and charge of the court, the jury returned a verdict of guilty of attempted armed robbery as charged in the bill of indictment. The court pronounced judgment that defendant be confined in the State's Prison for a term of not less than eighteen nor more than twenty-five years, and defendant gave timely notice of appeal to the Court of Appeals. The case is before the Supreme Court for initial appellate review pursuant to our general referral order dated 31 July 1970.

*F. O'Neil Jones, Attorney for the defendant appellant.*

*Robert Morgan, Attorney General, and Ralph Moody, Depu-ty Attorney General, for the State.*

HUSKINS, Justice.

The refusal of the court to suppress the evidence of Fred Cook, identifying defendant as the man who attempted to rob him, constitutes defendant's only assignment of error. Defendant argues that he was identified at the jail in the absence of his counsel and under suggestive circumstances amounting to a denial of due process in violation of the Fourteenth Amendment. We now examine the validity of this contention.

Rules established for in-custody confrontation for identification purposes require that: (1) the accused be warned of his constitutional right to the presence of counsel during the confrontation; (2) when counsel is not knowingly waived and is not present, the testimony of witnesses that they identified the accused at the confrontation be excluded; (3) the in-court identification of the accused by a witness who participated in the pretrial out-of-court confrontation be likewise excluded unless it is first determined on *voir dire* that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. Failure to observe these rules is a denial of due process. *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S.Ct. 1926 (1967) ; *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S.Ct. 1951 (1967) ; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969) ; *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968). *See generally,* Quinn, In the Wake of Wade: The Dimensions of the Eyewitness Identification Cases, 42 U. Colo. L. Rev. 135 (1970).

[1]　In addition, it has become settled law that lineup and confrontation procedures "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violate due process and are constitutionally unacceptable. *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S.Ct. 967 (1968) ; *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970) ; *State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507 (1970).

[2]　Applying the foregoing principles to the facts in this case, we hold that the pretrial identification procedure at the jail

violated the established rules and that the testimony of Fred Cook to the effect that he identified the defendant at the jail was tainted by that illegality and thus inadmissible as a matter of constitutional law. *Foster v. California,* 394 U.S. 440, 22 L. Ed. 2d 402, 89 S.Ct. 1127 (1969) ; *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S.Ct. 1684 (1961). "Evidence unconstitutionally obtained is excluded in both state and federal courts as an essential to due process—not as a rule of evidence but as a matter of constitutional law." *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). The jailer allowed the prosecuting witness to view the accused in the absence of counsel and under suggestive circumstances. This witness had been informed by the officers that the robber had been caught, that his name was Bobby Smith, and that he was in jail. Cook went to the jail to view the man who had been arrested. The jailer, apparently unaware that a lineup was planned for the next day and unaware that the accused was entitled to the presence of counsel during any confrontation for identification purposes, permitted Fred Cook to enter the cell block where he viewed the defendant. The accused was wearing a white T-shirt and gray pants—clothing similar to that worn by the would-be robber, while the other two prisoners in the cell were dressed differently. The accused is a young man, while one of the other prisoners was middle-aged and the other was much larger and heavier than defendant. Defendant had not been advised of his constitutional rights, had not been informed of his right to counsel, and no counsel was present. The totality of these circumstances reveal a pretrial identification procedure unnecessarily suggestive, in violation of the rule as to counsel, and offensive to fundamental standards of decency, fairness and justice. If defendant's conviction rested on his identification at that illegal confrontation, it could not stand.

[3]   On the record before us, however, the evidence is overwhelming that Cook's in-court identification of defendant was not based on the illegal out-of-court confrontation at the jail but on observations made at the time of the crime and during the previous week. The defendant had been "hanging around" Cook's service station for a week prior to the crime. Cook saw him every day from Monday through Thursday night. "He would come hanging around the service station during the day, and it was every day that I saw him . . . I knew him well on sight when I saw him. . . . I see the person now who tried to

rob me on October 9, 1969, and he is sitting right there (witness indicating). He is sitting next to Mr. Jones. That's the same boy I saw the night of October 9, 1969, and the one I saw in jail was the one who tried to rob me out there that night, and he is the same one here now. If I had not seen him in jail, I would know that he was the one."

It is evident that Cook's in-court identification was independent in origin, stemming from his observation of defendant during the week and on the night of the robbery, and was in nowise influenced by the confrontation at the jail. Cook knew the man who attempted to rob him but did not know his name. The officers supplied the name while Cook independently identified the man. There is ample evidence to support the finding of the trial judge that the in-court identification was independent of the illegal out-of-court confrontation. Fred Cook knew the man who attempted the robbery long before he saw him at the jail. At that confrontation Cook only ascertained that the man in jail named "Bobby Smith," for whom he was swearing out a warrant at the instance of the officers, was in fact the would-be robber he already knew.

In all events, the erroneous admission of evidence concerning the confrontation at the jail was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967); *Gilbert v. California, supra.* Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission constitutes harmless error. *Fahy v. Connecticut,* 375 U.S. 85, 11 L. Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970).

Defendant having failed to show prejudicial error, the verdict and judgment must be upheld.

No error.