STATE OF NORTH CAROLINA v. LARRY ALEXANDER WADDELL

No. 30

(Filed 17 December 1975)

1. **Criminal Law §§ 91, 173— trial before outlaw order rescinded — reference to declaration as outlaw — invited error**

Defendant was not denied a fair trial because he was put to trial before an order declaring him an outlaw pursuant to G.S. 15-48 was rescinded since the statute applied only so long as defendant re-

State v. Waddell

mained at large and no rescission of the order was required once defendant was in custody; nor was defendant prejudiced by evidence that defendant had been declared an outlaw where such evidence was initially and repeatedly disclosed by defendant's own counsel.

2. Criminal Law § 89— impeachment — specified criminal acts

While a witness cannot be impeached by cross-examination as to whether he has been arrested for or indicted for or accused of an unrelated criminal offense, he may be asked whether he has committed specified criminal acts or has been guilty of specified reprehensible or degrading conduct.

3. Criminal Law § 89— cross-examination — specific criminal and reprehensible conduct

A defense witness was properly asked on cross-examination whether he threatened to shoot two customers on a certain occasion and whether he shot a person on that date since the questions inquired into specific criminal and reprehensible conduct by the witness.

4. Criminal Law § 88— scope of cross-examination

In this jurisdiction cross-examination is not confined to the subject matter of direct testimony but may extend to any matter relevant to the case.

5. Criminal Law § 88— cross-examination of defendant — new matter

Questions asked defendant on cross-examination concerning actions of defendant and another immediately before and during an alleged robbery and murder were relevant and competent although the questions were not based on evidence previously introduced.

6. Jury § 5— reexamination of prospective juror — death penalty views — excusal by court

In a first degree murder prosecution, the trial court did not err in allowing the district attorney to reexamine a prospective juror concerning his beliefs as to capital punishment after the juror had been accepted by the State and by defendant but before the jury was impaneled, and the court in its discretion properly excused the juror when he stated upon reexamination that he could not vote for a verdict of guilty with knowledge the death penalty would be imposed even though he was satisfied of defendant's guilt.

7. Constitutional Law § 29— absence of systematic exclusion of members of defendant's race

Defendant failed to show that members of his race were systematically or arbitrarily excluded from the jury panel by the district attorney.

8. Criminal Law § 66— identification testimony — necessity for voir dire

When the State offers evidence of identification and there is an objection and a request for a *voir dire* hearing, the trial judge should conduct a *voir dire* and hear the evidence of both defendant and the State, find facts and determine the admissibility of the proffered evidence.

State v. Waddell

**9. Criminal Law § 66— pretrial photographic identification — lawfulness**
    An out-of-court photographic identification at which a witness chose the photograph of defendant from a group of fifteen photographs of young black males was not unlawful and impermissibly suggestive and thus did not taint the witness's in-court identification of defendant.

**10. Criminal Law § 66— lawfulness of lineup — identification of another at lineup — effect on in-court identification of defendant**
    A lineup was lawful and did not taint a witness's in-court identification of defendant where an attorney representing defendant's interest viewed the lineup, and the lineup consisted of six black males of approximately the same age and height and dressed alike; the fact that the witness failed to identify defendant at the lineup, but in fact identified another person as her husband's murderer, goes to the weight rather than the competency of her in-court identification testimony.

**11. Homicide § 21— murder during robbery — sufficiency of evidence**
    Even if the victim's wife had not identified defendant as the person who killed her husband with a shotgun during a robbery, the State's other evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of first degree murder where it tended to show that a white cloth bag containing money was taken from the victim by a black male, when defendant and a companion went to a witness's house shortly after the robbery, defendant was carrying a white cloth bag containing coins and currency, the companion was carrying a shotgun, and defendant removed from his pocket a pistol identified as belonging to the victim, the victim's pistol was later found in defendant's apartment, the witness heard defendant tell his companion he shot the victim because he saw the victim·go for a gun, and defendant admitted he was in the vicinity of the crime at approximately the time it occurred.

**12. Criminal Law § 113— failure to instruct on alibi**
    The trial court was not required to instruct the jury on alibi absent a request therefor by defendant; furthermore, the evidence did not require an instruction on alibi even if requested where defendant testified that he was in the vicinity of the crime at the time it occurred.

**13. Criminal Law § 113— evidence defendant declared outlaw — absence of cautionary instruction**
    The trial court did not err in failing, without the request of defense counsel, to give a cautionary instruction that evidence concerning defendant having been declared an outlaw should not be considered as evidence of his guilt.

**14. Constitutional Law § 36— death penalty— constitutionality**
    Imposition of the death penalty for first degree murder did not constitute cruel and unusual punishment.

State v. Waddell

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Thornburg, J.*, 6 January 1975 Session of the Superior Court of MECKLENBURG County.

Defendant was charged in an indictment, proper in form, with the first-degree murder of Alma Bertram Wood.

The State's evidence, in summary, was as follows:

Mrs. Margaret Wood, wife of deceased, testified that on 12 July 1974 she and her husband worked at his dry cleaning establishment until about 6:30 p.m. Upon closing the establishment, they started to their automobile. Mr. Wood, armed with a pistol, was carrying a bag containing the day's receipts. They encountered defendant at their car who at that uttered the word "Ha," and flipped some clothes from his arm revealing a sawed-off shotgun. He said "gimme the bag" and almost simultaneously with his demand, fired the shotgun toward Mr. Wood. Mrs. Wood observed defendant fleeing with the money bag and found her husband lying on his back with blood gushing from a wound in his neck. She identified State's Exhibit 5 as the pistol which her husband carried on that day. The witness, without objection from defense counsel, unequivocally identified defendant as the man who robbed and shot her husband with a sawed-off shotgun.

The State offered expert medical testimony to the effect that Mr. Wood died as a result of a wound inflicted by a shotgun, fired at close range.

Hazel Eugene Erwin testified that on 12 July 1974, he was driving by Mr. Wood's dry cleaning establishment when he heard a shot. He observed Mr. Wood stumbling backwards and saw a man wearing a lavender t-shirt and carrying a sawed-off shotgun grab a bag and flee to a nearby wooded lot.

Evelyn Byers testified that Eugene Johnson and Larry Waddell came to the house in which she lived with her mother shortly after 6:30 p.m. on 12 July 1974. She allowed defendant to use the telephone in the Byers' residence and heard him ask for "Dot" and thereafter heard him give directions to the Byers' house and ask that he be picked up there. At that time defendant had an off-white drawstring money bag containing coins and currency. Johnson was carrying a plastic bag which contained a broken-down shotgun. After defendant finished his telephone conversation, he asked her to take his braided hair

loose and comb it out. While she was unbraiding defendant's hair, he removed a pistol from his pocket. She identified State's Exhibit 5 as the pistol which she saw at that time. Upon her inquiry defendant told her that his name was Larry. The witness further testified that she heard Johnson ask defendant "Man, why did you shoot him?" Waddell responded "I seen him go for his gun." Shortly after this conversation defendant and Johnson left the house and rode away in a green car driven by an unidentified third person.

R. J. Whiteside, a Charlotte police officer, testified that Waddell was arrested for the murder of Alma Bertram Wood on 19 November 1974 in Apartment C-13 at 1701 West Boulevard, Charlotte, N. C. At the time of the arrest, Waddell was in the process of having his head shaved. The officer stated that he found two pistols in the apartment and one of the pistols was the one identified as State's Exhibit 5.

The State rested and defendant offered evidence tending to show the following:

Defendant testified that on 12 July 1974, at about 6:30 p.m., he met Ernest Johnson at the corner of Trade and Cedar Streets and Johnson inquired if he knew anyone who would give him a ride to Clanton Park. Upon his reply that he would have to make a telephone call, Johnson said that he knew a nearby place where the call could be made. They went to Evelyn Byers' house where Evelyn unbraided his hair and combed it out. He stated that he was not carrying anything with him at that time but that Johnson did have a package or a bag. He had no knowledge of its contents. He further stated that Eric Cunningham came by and gave them a ride to his (Waddell's) house. He denied he robbed or shot Mr. Wood.

John Alford, testifying for defendant, said that on 12 July 1974 he and Eric Cunningham picked up Waddell and Johnson at the Byers' home. Waddell was not carrying anything when he entered the car but Johnson was carrying a bag. When they arrived at Waddell's home, Johnson gave Waddell a gun and some money.

Marshall McCallum testified concerning a lineup procedure viewed by him and Mrs. Wood. We will consider this lineup procedure and the admissibility of the identification testimony more fully in the opinion.

Defendant moved for judgment as of nonsuit at the close of the State's evidence and at the close of the evidence for the defense. Both motions were denied.

The jury returned a verdict of guilty of first-degree murder and defendant appealed from judgment entered on the verdict imposing the death penalty.

*Attorney General Rufus L. Edmisten, by Deputy Attorney General Jean A. Benoy and Associate Attorney David S. Crump, for the State.*

*T. O. Stennett for the defendant.*

BRANCH, Justice.

[1] Defendant first contends he was denied a fair trial because he was put to trial after an order was entered declaring him to be an outlaw pursuant to G.S. 15-48 and before the order was rescinded.

G.S. 15-48 provides:

In all cases where any justice or judge of the General Court of Justice shall, on written affidavit, filed and retained by such justice or judge, receive information that a felony has been committed, by any person, and that such person flees from justice, conceals himself and evades arrest and service of the usual process of law, the justice or judge is hereby empowered and required to issue proclamation against him reciting his name, if known, and thereby requiring him forthwith to surrender himself; and also empowering and requiring the sheriff of any county in the State in which such fugitive shall be to take such power with him as he shall think fit and necessary for the going in search and pursuit of, and effectually apprehending, such fugitive from justice, which proclamation shall be published at the door of the courthouse of any county in which such fugitive is supposed to lurk or conceal himself, and at such other places as the justice or judge shall direct; and if any person against whom proclamation has been thus issued continues to stay out, lurks and conceals himself, and does not immediately surrender himself, any citizen of the State may capture, arrest, and bring him to justice, and in case of flight or resistance by him, after being called on and warned to surrender, may slay him without accusation of any crime.

State v. Waddell

Defendant seems to take the position that the order declaring him an outlaw should have been rescinded before his trial. Obviously the statute only applied so long as defendant remained at large. Neither statutory provision nor necessity requires the rescission of such order once defendant is in custody. Further the record reveals that evidence concerning defendant's having been declared an outlaw was initially and repeatedly disclosed by defendant's counsel. On two occasions during the *voir dire* examination of prospective jurors defense counsel referred to the defendant having been declared an outlaw. Defense counsel also elicited the same information from defendant on his redirect examination and from police officer Whiteside on cross-examination.

Defendant cannot invalidate a trial by introducing evidence or by eliciting evidence on cross-examination which he might have rightfully excluded if the same evidence had been offered by the State. *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873; *State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429. Neither is invited error ground for a new trial. *State v. Payne,* 280 N.C. 170, 185 S.E. 2d 101; *Overton v. Overton,* 260 N.C. 139, 132 S.E. 2d 349.

It appears that it was a part of counsel's plan and theory of defense to inform the jury that defendant had been declared an outlaw. Defendant cannot now successfully contend that the trial judge committed prejudicial error because he did not, *ex mero motu,* object to experienced counsel's plan of trial. This assignment of error is overruled.

Defendant's Assignment of Error No. 4 is as follows:

The Trial Court erred in overruling defense objection to questions propounded by the State where no evidence had been offered that would substantiate the asking, and where State was eliciting testimony desiring the jury to infer therefrom that defendant had murdered another person.

The questions directed to defendant's witness John Thomas Alford on cross-examination to which defendant excepts are found on page 86 of the record, to wit:

Q. That was the day you looked at the customers in there and said, "Cracker, look at me and I will blow your head off."

OBJECTION.   NO RULING.

A. I didn't say that.

Q. You deny looking at a third customer and saying, "Honky, I am going to blow your God damned head off."?

DEFENSE COUNSEL: Objection. No ruling.

A. No, I didn't.

DEFENSE COUNSEL: Objection. No ruling.

Q. I will ask you if that wasn't the day you took a 38—

DEFENSE COUNSEL:   OBJECTION.

COURT: Let me hear this question.

Q. I'll ask you if that wasn't the day you took a 38 automatic pistol and shot Gregory Leonard's heart out?

OBJECTION.   OVERRULED.

A. No, I deny that.

[2]   A witness, including a defendant in a criminal action, is subject to being impeached or discredited by cross-examination. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174. The witness may be asked all sorts of disparaging questions and he may be particularly asked whether he has committed specified criminal acts or has been guilty of specified reprehensible or degrading conduct. *State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874; *State v. Jones,* 278 N.C. 88, 178 S.E. 2d 820; *State v. Bell,* 249 N.C. 379, 106 S.E. 2d 495. However, the rule remains that a witness cannot be impeached by cross-examination as to whether he has been arrested for or indicted for or accused of an unrelated criminal offense. *State v. Williams, supra.* The scope of cross-examination rests largely in the trial judge's discretion and his rulings thereon will not be disturbed unless it is shown that the verdict is improperly influenced thereby. *State v. Carver,* 286 N.C. 179, 209 S.E. 2d 785.

[3]   Examination of the questions asked the witness Alford on cross-examination shows that they inquired only into specific criminal and reprehensible conduct on his part. There is no showing of abuse of discretion on the part of the trial judge as to the scope of the cross-examination or that the solicitor acted in bad faith.

All except one of the questions directed to the defendant Waddell and challenged by this assignment of error relate to

his actions immediately before and during the alleged murder and robbery. Representative examples of these questions are as follows:

Q. And that when Mr. and Mrs. Wood started walking out, you told Ernest Johnson to sit there on the wall and wait for you, that you would take care of it, and you walked across the street?

DEFENSE COUNSEL: Your Honor, I object to this because there is absolutely no evidence been offered here that would be in line with these questions he is asking, and I don't think that it is proper.

COURT: OVERRULED.

DEFENSE COUNSEL: The District Attorney is soliciting testimony without having any evidence introduced to go on.

COURT: Overruled, go ahead.

A. I deny that.

Q. And that Ernest Johnson sat over there on the wall across the street while you walked up to Mr. Wood and blew his neck off with a sawed-off shotgun?

OBJECTION. OVERRULED.

A. He didn't set [sic] over there while I walked across the street. It didn't happen that way. I deny that we met down to the corner of Cedar and Fourth Street and that we two got back together.

[4] In this jurisdiction, cross-examination is not confined to the subject matter of direct testimony but may extend to any matter *relevant* to the case. *State v. Huskins,* 209 N.C. 727, 184 S.E. 480; *State v. Allen,* 107 N.C. 805, 11 S.E. 1016. We recognize this liberal practice for the purpose of allowing the cross-examiner to elicit details which might be favorable to his case, to bring out new and relevant facts and to impeach or cast doubt upon the credibility of the witness. 1 Stansbury's North Carolina Evidence (Brandis Revision) § 35, pps. 105, 107. *Barnes v. Highway Comm.,* 250 N.C. 378, 109 S.E. 2d 219.

[5] We hold that the questions asked defendant on cross-examination were relevant and were within the allowable purposes of cross-examination.

This assignment also challenges the following question:

Q. Just one more question, as a matter of fact, I will ask you if you didn't on the 27th day of June, 1974, take that same shotgun and walk up to Marion Dale Kodel at the Payless Service Station at 3800 Wilkinson Boulevard and say, "Gimme the money bag," and bash him in the head with that same sawed-off shotgun?

DEFENSE COUNSEL: OBJECTION, Your Honor.

A. I did not.

This question was only directed to whether defendant had committed a specific criminal act and the question was therefore proper.

Defendant next contends that the trial judge committed prejudicial error by excusing prospective juror Stitt.

[6] During the *voir dire* examination of prospective jurors, both the defendant and the State accepted juror Stitt. Before impanelment of the jury, the District Attorney requested that he be allowed to further examine prospective juror Stitt. The District Attorney stated that Mr. Stitt's answers to defense counsel's *voir dire* questions had led the District Attorney to believe that he has misinterpreted Mr. Stitt's answers to the District Attorney's inquiries concerning the prospective juror's attitude toward imposition of the death penalty. The District Attorney, over defendant's objection, was allowed to make further inquiry. Mr. Stitt then stated that knowing that the death penalty would be imposed, he did not feel that he could vote for a verdict of guilty even though he was satisfied of defendant's guilt. Thereupon the trial judge, in his discretion, and at the request of the prospective juror, excused Mr. Stitt.

We have considered and decided the question presented by this assignment of error many times.

In *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572, after both the State and defendant had accepted a juror, but before the jury was impaneled, it came to the judge's attention that service on the jury would result in extreme family hardship to juror Foster. We held that the judge's action in excusing the prospective juror Foster in this murder trial did not constitute prejudicial error.

In *State v. Harris,* 283 N.C. 46, 194 S.E. 2d 796, defendants were charged with murder. We there held that the trial judge did not commit prejudicial error by allowing the State, over defendant's objections, to reexamine a prospective juror after she had been passed by both the State and defendant when before impanelment the juror let it be known that she had changed her opinion about capital punishment.

In the very recent case of *State v. Wetmore,* 287 N.C. 344, 215 S.E. 2d 51, the trial judge allowed the solicitor to examine and challenge one prospective juror for cause and another prospective juror to be peremptorily challenged after both jurors had been passed by the State and defendant when it came to the court's attention before the jury's impanelment that one of the prospective jurors had formed an opinion as to defendant's guilt. It was also established that the other prospective juror was well acquainted with defendant and the defendant was a close friend of the prospective juror's son. We found no prejudicial error in the reexamination and excusal of these prospective jurors. Accord: *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Vann,* 162 N.C. 534, 77 S.E. 295; *State v. Vick,* 132 N.C. 995, 43 S.E. 626.

Although the court exercised its discretion in excusing prospective juror Stitt, the answers given by the prospective juror concerning his attitude toward the death penalty could have supported an excusal for cause. See *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750.

It is well established in this jurisdiction that it is the duty of the trial judge to see that a competent, fair and impartial jury is impaneled, and to that end the judge may, in his discretion, excuse a prospective juror even without challenge from either party. Decisions as to a juror's competency at the time of selection and his continued competency to serve are matters resting in the trial judge's sound discretion and are not subject to review unless accompanied by some imputed error of law. *State v. Harris, supra; State v. Atkinson, supra; State v. Vann, supra.*

[7] Defendant states in his brief that the systematic maneuverings of the District Attorney excluded people of defendant's race. This contention is not supported by the record. Defendant fails to show that members of defendant's race were systematically

or arbitrarily excluded from the jury panel. See *State v. Noell, supra; State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768. We hold that the trial judge properly excused juror Stitt.

Defendant assigns as error the trial judge's denial of his motions for judgment as of nonsuit. He argues that Mrs. Margaret Wood was the only identifying witness and that her testimony was not sufficient to support a finding by the jury that defendant was the perpetrator of the crime charged.

During the direct examination of Mrs. Wood, the District Attorney asked Mrs. Wood if she could identify the man who shot her husband. There was no objection by defense counsel. In response to this question, Mrs. Wood stated "I see the man in the courtroom today that I saw murder my husband with a sawed-off shotgun." She then pointed to defendant Larry Waddell to indicate the person who shot her husband. On cross-examination Mrs. Wood admitted that during the police lineup in which defendant participated she identified another man as being her husband's assailant. She explained her misidentification: "I did not identify him because he was disguised. His head was covered with a toboggan and pulled down over. He had lost weight. I could not see his head."

There was unquestionably ample evidence to carry the case to the jury if Mrs. Wood's in-court identification was properly admitted into evidence.

[8]  When the State offers evidence of identification and there is an objection and a request for a *voir dire* hearing, the trial judge should conduct a *voir dire* and hear the evidence from both the defendant and the State, find facts and determine the admissibility of the proffered evidence. *State v. Accor, State v. Moore,* 277 N.C. 65, 175 S.E. 2d 583. Nevertheless our decisions require that there be at least a general objection in order to invoke *voir dire* proceedings. *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534; *State v. Cook,* 280 N.C. 642, 187 S.E. 2d 104. However, in capital cases it is our practice, despite counsel's failure to observe recognized rules, to carefully examine the record for prejudicial error. We, therefore, elect to further consider the admission of the unchallenged identification testimony.

The record shows that several weeks after the killing, Mrs. Wood was shown about fifteen photographs of young black

males and at that time she picked the photograph of defendant Waddell as a photograph of the person who robbed and killed her husband. This evidence was initially brought out by defense counsel and the above summary represents all we find in the record concerning the photographic identification.

[9]   We do not extend the right of counsel's presence to out-of-court examinations of photographs which include a suspect, whether he be in custody or at liberty. *State v. Accor, State v. Moore, supra.* Nor do we find anything in this record which indicates that the out-of-court photographic identification was unlawful and impermissibly suggestive. Thus the in-court identification was not tainted by the out-of-court photographic identification.

Our search of the record also discloses that a lineup was conducted on 20 November 1974 and that defendant was one of the persons in the lineup.

It is well settled that lineup procedures which are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violate due process and are constitutionally unacceptable. *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967; *State v. Smith,* 278 N.C. 476, 180 S.E. 2d 7; *State v. Austin,* 276 N.C. 391, 172 S.E. 2d 507. It is also established by decisions of this Court and the federal courts that an accused must be warned of his right to counsel during such confrontation and unless presence of counsel is understandingly waived testimony concerning the lineup must be excluded in absence of counsel's attendance. Further if there be objection to an in-court identification by a witness who participated in an illegal lineup procedure, such evidence must be excluded unless it be determined on *voir dire* that the in-court identification is of independent origin and therefore not tainted by the illegal lineup. *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951; *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926; *State v. Smith, supra.*

[10]   In the instant case defense counsel again elicited information concerning the lineup and later offered as a defense witness, Marshall McCallum, an attorney who practices in Charlotte, N. C. Mr. McCallum testified that he attended the lineup on 20 November 1974 and that "he was requested to view the lineup by an attorney who was representing Waddell's interest."

He also represented another person who appeared in the lineup. He stated that the lineup which he and Mrs. Wood viewed consisted of six black males of approximately the same age and the same height. They were all dressed in t-shirts, dark pants and green toboggans. Each of the men came towards the viewing partition and made a complete turn so as to expose both sides of his face. During the lineup Mrs. Wood requested that Waddell say "Gimme the bag." She also requested that James Nealy, one of the men in the lineup, be asked to repeat the same phrase. Both men complied and Mrs. Wood thereafter identified Nealy as the man who robbed and killed her husband. This record discloses absolutely no evidence that the lineup as conducted was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Further the uncontradicted evidence shows that an attorney representing defendant's interest was present to view the lineup. Thus there was no illegal lineup to infect the in-court identification.

The fact that Mrs. Wood failed to identify defendant at the lineup, and in fact identified another person as her husband's murderer goes to the weight rather than the competency of the testimony and is a matter for the jury. *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384; *State v. Hill*, 278 N.C. 365, 180 S.E. 2d 21; *Lewis v. United States*, 417 F. 2d 755.

We are of the opinion that had there been a *voir dire* procedure the evidence which appears in this record would have supported a ruling admitting Mrs. Wood's identification testimony into evidence. In our search for possible prejudice in the admission of this evidence, we also note that the evidence of Mrs. Wood's misidentification at the lineup would seem to have been favorable to defendant. Finally if the witness Wood had not testified as to defendant's identity, there was other sufficient substantial evidence as to every element of the crime charged to repel defendant's motions for judgment as of nonsuit.

[11] Mrs. Wood testified that her husband was robbed and was killed by a shotgun wielded by a black man at about 6:30 p.m. on 12 July 1974. She generally described this man and the clothes he was wearing. Mrs. Wood stated that her husband carried money in a "white cloth bag with . . . two tie strings that came together." The witness Byers testified that defendant and Eugene Johnson came to her house shortly after 6:30 p.m.

on 12 July 1974. Defendant was carrying a white drawstring money bag containing coins and currency. Johnson was carrying a shotgun. While defendant was in her home and while she was unplaiting his hair, he removed a pistol from his pocket. She identified this pistol at trial and the witness Wood identified the same pistol as the pistol her husband was carrying on the day that her husband was killed and robbed. The same pistol was found in the apartment where defendant was apprehended and arrested. Witness Byers further testified that she heard Johnson ask Waddell, "Man, why did you shoot him?" Waddell responded "I seen him go for his gun." Defendant testified and admitted that he was in the vicinity in which the crime occurred at approximately the time of the crime. He further admitted that he was in the home occupied by the witness Byers on the same date shortly after 6:30 p.m.

Thus, applying the well recognized and often repeated rules governing the granting or denial of motions for judgment as of nonsuit, we hold that the trial judge properly denied defendant's motions for judgment as of nonsuit.

The Attorney General filed a "caveat" to his brief in which, acting as an officer of the Court, he calls to our attention, without citation of authority, several matters which he suggest we should consider *ex mero motu.*

The State suggests that the trial judge should have, without request by defense counsel, instructed on the law of alibi.

[12]  We formerly held that when a defendant offered evidence of alibi it was incumbent upon the trial judge to charge as to the legal effect of such evidence without a request by defendant for such instructions. *State v. Spencer,* 256 N.C. 487, 124 S.E. 2d 175. However, since the decision in *State v. Hunt,* 283 N.C. 617, 197 S.E. 2d 513 (filed 12 July 1973), the trial judge is not required to instruct on alibi unless defendant specifically requests such instruction. Further, unless there is evidence that the accused was at some other specified place at the time the crime was committed, the evidence would not require a charge on alibi even had there been a request for such charge. Neither does a mere denial that he was at the scene of the crime require the charge. In such case, the general charge that the jury should acquit the defendant unless it is satisfied beyond a reasonable doubt that the defendant committed the crime is sufficient. *State v. Green,* 268 N.C. 690, 151 S.E. 2d 606. Here a cursory

reading of the record would show that the crime was committed at the corner of Trade and Cedar Streets in the City of Charlotte on 12 July 1974 at approximately 6:30 p.m. Defendant Larry Waddell testified that he was on the corner of Trade and Cedar Streets on 12 July 1974 at around 6:30 p.m. Thus there was insufficient evidence to require the instruction on alibi even had there been a special request for it.

[13] The State also points to the failure of the trial judge, without request of defense counsel, to give a cautionary instruction that evidence concerning defendant having been declared an outlaw should not be considered as evidence of guilt. We doubt that such an instruction would have been beneficial to defendant. It is altogether possible that the instruction by the trial judge would have magnified rather than diminished the harmful effect of the evidence which had repeatedly been elicited by defense counsel.

Finally one of the matters to which the State directs our attention is whether the trial judge should have assumed greater responsibility in the control of the trial. We join in the State's concern that the trial judge, the prosecutor, the appellate courts as well as defense counsel should strive to give every accused a fair trial. However, it must be borne in mind that criminal trials are adversary in nature and to require a trial judge to unduly intrude into counsel's plan of trial, to constantly interpose objections or to guess whether counsel desires *voir dire* hearings when counsel remains silent would prolong *ad finitum* trials and final judgments in criminal cases. Such requirements would weight the scales of justice to the criminal and retard fair and speedy trials. The State, as well as defendant, is entitled to a fair trial.

[14] Defendant's contention that judgment should be arrested because the imposition of the death penalty results in cruel and unusual punishment and is therefore constitutionally impermissible has been rejected by this Court in many recent decisions. We do not deem it necessary to again set forth the exhaustive reasoning of these cases. *State v. Robbins,* 287 N.C. 483, 214 S.E. 2d 756; *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262; *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844; *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6; *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10; *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721; *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19.

Our careful search of this entire record discloses no error warranting a new trial.

No error.