DOROTHY ISABELLA OVERTON, WIDOW, PETITIONER v. ANNABELLE OVERTON, NON COMPUS MENTIS. JENNETTE OVERTON, FREDERICK OVERTON, SYLVIA LEE OVERTON, MINORS, AND ELIJAH CHERRY, TRUSTEE AND EXECUTOR OF THE ESTATE OF ANTHONY ASHLEY OVERTON, DECEASED, RESPONDENTS.

(Filed 18 September 1963.)

**1. Marriage § 2—**

Proof or admission of a ceremonial marriage raises a presumption of its regularity and validity, but the introduction in evidence of an authenticated marriage record does not establish the marriage even *prima*

*facie* in the absence of evidence or admission of the identity of the contracting parties, and therefore when the adverse parties contend that claimant, asserting rights as the widow of the decedent, was not actually present but that another stood in for her, the burden remains upon claimant to prove her presence as an essential element of a valid marriage.

**2. Marriage § 1—**

The personal presence of both contracting parties is essential to a proper ceremonial marriage, and marriage by proxy is invalid as a ceremonial marriage.

**3. Appeal and Error § 44—**

An erroneous instruction given in accordance with appellant's written prayer for special instructions is invited error of which appellant may not complain notwithstanding the statement of the court that it would have given such instructions even in the absence of a request.

**4. Evidence § 24—**

Authentication adds nothing to the weight and effect of a public document as evidence, but merely renders the copy competent in evidence.

**5. Same;    Marriage § 2—**

The introduction of a certified copy of the marriage record, authenticated according to the Act of Congress, does not establish marriage *prima facie* when the identity of the contracting parties is questioned and there is a material discrepancy between the age of the bride as given in the marriage record and the then age of the litigant who claims to have been the bride, and an instruction that the authenticated marriage record itself established the marriage *prima facie* is prejudicial error.

**6. Judgments § 30;    Pleadings § 24—**

The denial of a motion to be allowed to amend during the course of the trial does not preclude a like motion prior to retrial, since *res judicata* does not apply to ordinary motions incidental to the trial.

APPEAL by respondents from *Peel, J.,* March 1963 Session of PASQUO-TANK.

*J. Kenyon Wilson, Jr., and Killian Barwick for Petitioner.*
*Frank B. Aycock, Jr., and W. C. Morse, Jr., for Respondents Annabelle Overton and Gerald F. White, guardian ad litem.*

MOORE, J.    This is a sequel to *Overton v. Overton,* 259 N.C. 31, 129 S.E. 2d 593, heard at the Spring term 1963. The first appeal was by petitioner. The case was tried at the September 1962 Term of the Superior Court of Pasquotank County before Bundy, J., and a jury. The jury answered the issue in favor of petitioner, but the judge, notwithstanding the verdict and contrary thereto, entered judgment in favor of respondents. The former opinion deals with the questions of

law raised by the entry of such judgment. We directed that the judgment be vacated and a judgment be entered in accordance with the verdict, respondents to have the right to appeal from the latter judgment when entered, if so advised. At the March 1963 Session of the Superior Court of Pasquotank Peel, J., entered judgment in accordance with the verdict as directed, and respondents excepted and appealed, assigning error.

The recitals of fact appearing in the former opinion should be ignored for the purposes of the present appeal. They related to matters then under consideration. The pleadings and evidence pertinent to the present appeal are limited to those involved in the trial of the issue before the jury.

The petition alleges in substance: Anthony Ashley Overton (hereinafter referred to as Anthony) died 12 November 1959 leaving a last will and testament. He willed his property to Annabelle Overton, Jennette Overton, Frederick Overton and Sylvia Lee Overton, respondents. At the time of his death he owned valuable property, real and personal. Petitioner, Dorothy Isabella Overton (Dorothy) is the widow of Anthony and is entitled to a year's support and dower.

Respondents, answering the petition, deny that Dorothy is the widow of Anthony and deny that she is entitled to any of his property.

Petitioner introduced in evidence a duly authenticated copy of the marriage record of New York County, State of New York, containing: (1) a copy of a "license for marriage," setting out the application therefor of one, Anthony Ashley Overton, age 22, born in Weeksville, North Carolina, and of one, Dorothy Isabella White, age 23, born in Weeksville, North Carolina; and (2) copy of "marriage certificate" of Rev. James A. Manning stating that he solemnized the rites of matrimony between the parties (naming them as above) at Brooklyn, New York, in the presence of Benjamin B. Overton (Benjamin) and Viola C. Overton (Viola) as witnesses on 30 November 1929 — the marriage certificate is subscribed by Rev. Manning and the witnesses, Benjamin and Viola.

Petitioner's witnesses testified to the following effect: Careful investigation does not disclose that there has been any action for or judgment of divorcement or annulment of the marriage of Anthony and Dorothy in New York or North Carolina. Dorothy has had no notice of any divorce or annulment action, nor has she heard that any such action has been instituted anywhere. She was 15 years of age in 1929. In New York in 1929 a girl of 15 could marry with the consent of a parent, guardian or a person standing *in loco parentis*, and if she married without such consent the marriage was only voidable. The

signatures on the application for marriage license are the genuine signatures of Anthony, the deceased, and Dorothy, the petitioner. On one occasion Anthony had visited Dorothy in the home of her mother at Weeksville (it does not appear whether this was before or after 30 November 1929). Since November 1929 Dorothy has gone by the name of Dorothy Overton.

Respondents' evidence tends to show: Benjamin is the brother of Anthony, the deceased, and lived in Brooklyn, New York, in 1929. Dorothy was in Brooklyn in 1929 and so was Anthony. Dorothy became pregnant and Anthony acknowledged that she was pregnant by him. Benjamin arranged for Rev. Manning to come to his (Benjamin's) home to solemnize the rites of marriage of Anthony and Dorothy. A ceremony was performed in Benjamin's living room on 30 November 1929. Dorothy did not take part in the ceremony, but remained at all times in another part of the house. Beulah Lewis stood in for Dorothy at the ceremony and stated to Rev. Manning that she was Dorothy White. (It is suggested that Beulah was asked to stand in for Dorothy for fear that Rev. Manning would refuse to perform the ceremony for one so young as Dorothy when no consent had been obtained from her parent for her marriage.) Benjamin and Viola, his wife, signed the certificate as witnesses. Viola and Rev. Manning are now dead. The whereabouts of Beulah Lewis is unknown. Dorothy stayed in Benjamin's house until after the baby was delivered — stillborn. Anthony did not cohabit with her after the ceremony.

In rebuttal Mr. Rubin, a New York attorney, testified that he had a telephone conversation with Benjamin in which the latter stated that the only persons present at the marriage ceremony were Rev. Manning, Anthony, Dorothy, Viola and himself, that Benjamin did not mention Beulah Lewis, and that Benjamin later refused to sign an affidavit that Anthony and Dorothy were married. Benjamin, being recalled, testified that he had a conversation with the attorney, that he refused to sign the affidavit because it was untrue, that Dorothy was not present at the ceremony and he did not tell the attorney she was.

An issue was submitted to and answered by the jury as follows: "Is Dorothy Isabella Overton the widow of Anthony Ashley Overton, deceased, as set forth in her petition? Answer: Yes."

In apt time the respondents requested Judge Bundy in writing to charge the jury:

"... (T)hat, if the jury finds as a fact from the evidence, that Dorothy Isabella Overton did not participate in the marriage ceremony performed in the home of Benjamin B. Overton on November 30, 1929, but was seated in a room some distance from

where said marriage ceremony was performed, then such pur-
ported marriage was a nullity and, if the jury should so find
by the greater weight of the evidence, the jury should answer the
only issue 'NO' ".

Respondents assign as error that part of the following excerpt from
the charge enclosed in parentheses:

". . . (O)ne must be present and participate in marriage as one of
the contracting parties to constitute a legal and valid marriage,
the Court instructs you that it has been asked to do, which it
would have done so anyway, that if the jury finds as a fact from
the evidence that Dorothy Isabella Overton did not participate
in the marriage ceremony performed in the house of Benjamin B.
Overton on November 30, 1929, but was seated in a room some
distance from where said marriage ceremony was performed,
then such purported marriage was a nullity and if the jury should
find by the greater weight of the evidence, the jury should answer
the only issue in this case 'NO' ".

"(I told you that the burden of that issue, the burden of this
issue, the burden of proof on the issue is upon the plaintiff to
satisfy you by the greater weight of the evidence that she is the
widow, but when she offers a certified copy of the marriage cere-
mony properly exemplified or other evidence of fact that there
was a marriage, that a marriage ceremony took place between
Anthony Ashley Overton and herself, Dorothy Isabella White,
then she has made out a prima facie case, that is, one which
stands until the contrary is shown; then if the respondents, con-
tending that she was not actually in participation, a participant
in the marriage ceremony, and that she was somewhere else, that
is an affirmative defense, and the burden is upon them to prove
that it is as they said, that she was not present during the mar-
riage ceremony, participating in it, as one of the contracting
parties.)"

At the trial before the jury there was no evidence or suggestion
that Anthony entered into a marriage ceremony with another woman
after November 1929, so the sole question for determination upon
the evidence presented was whether he married Dorothy as alleged in
the petition.

If a ceremonial marriage is in fact established by evidence or
admission it is presumed to be regular and valid, and the burden of
showing that it was an invalid marriage rests on the party asserting
its invalidity. *Kearney v. Thomas*, 225 N.C. 156, 33 S.E. 2d 871;
*Faggard v. Filipowich*, 27 S. 2d 10 (Ala. 1946); *In re Callahan's*

*Estate,* 254 N.Y.S. 46 (1913); 35 Am. Jur., Marriage, s. 192, pp. 303, 304; 55 C.J.S., Marriage, s. 43c(1), p. 890. It is presumed that a marriage entered into in another State is valid under the laws of that State in the absence of contrary evidence, and the party attacking the validity of a foreign marriage has the burden of proof. 55 C.J.S., Marriage, s. 43c(2), p. 893. The judge below probably had these principles in mind when he placed the burden of proof upon the respondents. But these principles have no application to the facts in the instant case. The marriage had not been *established* or *admitted;* the very question of fact to be determined by the jury on the evidence adduced was whether there was a marriage, not whether a proven or admitted marriage was invalid. Respondents introduced evidence that Dorothy was not present and did not participate in the ceremony. In the solemnization of a ceremonial marriage in the State of New York the parties must declare in the presence of a clergyman or magistrate and an attending witness that they take each other as husband and wife. Domestic Relation Laws of N. Y., s. 12; Ch. 14, s. 12, Consolidated Laws of N. Y.; Ch. 19, Laws of N. Y., 1909. "Under statutes requiring the solemnization of the marriage, . . . the personal presence of both the bride and the groom at the marriage rites is essential to a proper solemnization of the marriage, so that a marriage by proxy is invalid as a ceremonial marriage." 55 C.J.S., Marriage, s. 32, p. 865. Common law marriages are recognized in New York, but there is no evidence of a common law marriage in the present case. There is no presumption that persons are married. 55 C.J.S., Marriage, s. 43a, p. 887. A person claiming property of a deceased person by reason of marriage to deceased has the burden of proof of the marriage, and the personal representative, lawful heirs or devisees of deceased do not have the burden of proving non-marriage. *In re Sandusky's Estate,* 52 N.E. 2d 285 (Ill. 1943); 35 Am. Jur., Marriage, s. 211, p. 318. In the case at bar the court mistakenly placed the burden of proving non-marriage on the respondents. The contention of respondents, by the evidence offered, that Dorothy was not present and did not participate in the ceremony is not — as stated by the court — an affirmative defense. Moreover, respondents' answers merely deny petitioner's allegation that Dorothy is widow of Anthony. It was incumbent upon petitioner to prove by the greater weight of the evidence that she and Anthony were married as alleged, that is, that they were both present and participated in the rites of marriage.

However, in this case respondents may not assert the objection that the court wrongfully placed the burden of proof of the issue upon them. They requested in their prayer for instructions that the

burden of proof be so placed, and the court complied. "When the court is led into error by a specific prayer for instruction which counsel in good faith has requested, ordinarily the client is bound by the instruction given, to the extent at least that he may not assert it in this Court as error." *Carruthers v. R.R.*, 218 N.C. 377, 378, 11 S.E. 2d 157; *Blum v. R.R.*, 187 N.C. 640, 122 S.E. 562; *Kelly v. Traction Co.*, 132 N.C. 368, 43 S.E. 923; *Moore v. Parker*, 91 N.C. 275; *Buie v. Buie*, 24 N.C. 87. It is true the judge stated that he would have given the instruction anyway, but in our opinion this does not relieve the respondents of their solemn commitment to the court on this point.

Nevertheless, we are of the opinion that there was prejudicial error in that portion of the challenged instruction which undertakes to explain the effect of the introduction of the authenticated copy of the purported marriage record. The court charged: ". . . (W)hen she (petitioner) offers a certified copy of the marriage ceremony properly exemplified *or* some other evidence of the fact that there was a marriage, that a marriage ceremony took place between Anthony . . . and herself . . ., then she has made out a prima facie case, that is, one which stands until the contrary is shown . . . ." (Emphasis added). The effect of this instruction, in the use of the disjunctive "or", is that the introduction of a certified copy of the marriage record, authenticated according to the Act of Congress, makes out a *prima facie* case of marriage. The purpose of the Act is to make a copy of a record of a foreign State admissible in evidence, without the necessity of bringing in and identifying the original. Authentication adds nothing to the weight and effect of the document as evidence. By their evidence respondents deny that a marriage took place between Anthony and Dorothy, deny that Dorothy was present at the ceremony, and assert that one Beulah Lewis stood in as proxy. Where, as here, the identity of the contracting parties is questioned, and there is a material discrepancy between the age of the bride as given in the marriage record and the age at the time of the litigant who claims to have been that bride, the authenticated copy of the marriage record alone does not make out a *prima facie* case. ". . . (T)he general rule is that a properly authenticated marriage record or register or copy or transcript thereof is admissible to prove marriage. It is, of course, necessary to identify the parties as the persons mentioned in the record." 35 Am. Jur., Marriage, s. 211, p. 318.

*In re Sandusky, supra,* is factually analagous. Plaintiff claimed an interest in the estate of deceased and alleged that she was his widow. Deceased was a resident of Illinois. Plaintiff introduced an authenticated marriage record from Kentucky. The record showed the age of the groom as 55; deceased was 81 at the time of the purported

marriage. Defendants denied the marriage. The court held that the burden was on the plaintiff to prove the marriage and to identify the parties.

It is not suggested in the present case that petitioner failed to make out a *prima facie* case. The authenticated copy of the marriage record together with the testimony of the witnesses in the case suffice to carry the issue to the jury. The vice of the instruction is that it gives to the authenticated copy of the marriage record greater weight and effect as evidence than the law permits under the circumstances, and thereby increases the burden of the already overladen respondents. There must be a new trial.

The parties hereto may desire to amend their pleadings before a retrial is had. If so, they may move therefor in superior court. It lies within the sound discretion of the court to .allow or deny such motions. It is pointed out that prior rulings on motions to amend are not necessarily *res judicata.* The doctrine of *res judicata* does not apply to ordinary motions incidental to the progress of the trial, but only to those involving a substantial right. 3 Strong: N. C. Index, Judgments, s. 30, p. 46; *Revis v. Ramsey,* 202 N.C. 815, 164 S.E. 358.

New trial.