MALCOLM M. LOWDER, MARK T. LOWDER AND DEAN A. LOWDER, PLAIN-
TIFFS v. ALL STAR MILLS, INC., LOWDER FARMS, INC., CAROLINA
FEED MILLS INC., ALL STAR FOODS, INC., ALL STAR HATCHERIES,
INC., ALL STAR INDUSTRIES, INC., TANGLEWOOD FARMS, INC., CON-
SOLIDATED INDUSTRIES, INC., AIRGLIDE, INC., AND W. HORACE
LOWDER, DEFENDANTS; AND CYNTHIA E. LOWDER PECK, MICHAEL W.
LOWDER, DOUGLAS E. LOWDER, LOIS L. HUDSON, INDIVIDUALLY AND AS
GUARDIAN AD LITEM FOR STEVE H. HUDSON, BRUCE E. HUDSON, BILLY
J. HUDSON, ELLEN H. BALLARD, JENNELL H. RATTERREE, DAVID P.
LOWDER, JUDITH R. LOWDER HARRELL, EMILY P. LOWDER COR-
NELIUS AND MYRON P. LOWDER, INTERVENING DEFENDANTS

No. 8420SC993

(Filed 18 June 1985)

1. **Limitation of Actions § 7— shareholders' derivative action for constructive
   trust—instructions on statute of limitations proper**

   The trial court properly instructed the jury that a ten-year statute of
   limitations applied to an action to impose a constructive trust on corporate
   assets arising from a breach of a fiduciary duty and the court's instruction
   properly applied the principle that the statute of limitations began to run from
   the time the trustee disavowed the trust and knowledge of the disavowal was
   brought home to the *cestui que trust*. Other alleged errors in the instructions
   were not raised at trial. Rule 10(b)(2), Rules of App. Procedure.

2. **Corporations § 12— misappropriation of corporate opportunities by corporate
   officer—evidence sufficient**

   There was sufficient evidence to support a verdict that defendant Horace
   Lowder as an officer or director of All Star Mills had usurped or misap-
   propriated corporate opportunities by the formation or operation of other cor-
   porations controlled by him. Mills had the financial ability to take advantage of
   the opportunities, Mills was engaging in the businesses which were diverted,
   and corporate facilities of Mills were used in the formation and operation of
   the various companies. There was sufficient evidence that Horace was an of-
   ficer at the time the opportunities arose in that he had signed the income tax
   returns of Farms as president as early as 1953 and the return of Mills as as-
   sistant treasurer as early as 1961, he had had major input into the formation
   and operation of these companies, and he had taken over management of the
   companies in the late 1950's when his father had surgery. Additionally, by
   1975 Mills engaged in no business except to lease its facilities to businesses

owned or controlled by Horace Lowder, and whether or not various decisions were just and reasonable to Mills was for the jury to decide.

**3. Corporations § 12— misappropriation of corporate opportunities to corporations controlled by officer—constructive trust against assets of officer's corporations —proper**

In a shareholders' derivative action alleging misappropriation of corporate opportunities by an officer, there was no error in entering a judgment which placed a constructive trust in favor of All Star Mills upon the assets of corporations controlled by defendant Horace Lowder rather than upon their stock. The judgment provided that the balance of the assets belonged to All Star Mills after the payment of liabilities and the return of shareholders' investment properly proven; moreover, the jury found that the operation of the companies and not just their formation constituted the misappropriation of corporate opportunities.

**4. Corporations § 13— misappropriation of corporate opportunities by officer to corporations controlled by officer—dissolution of corporations proper**

There was no error in a judgment ordering dissolution of corporations controlled by defendant Horace Lowder where the court found and concluded that plaintiffs as shareholders of All Star Mills had reasonable expectations that the companies would be managed by the controlling officer in accordance with his fiduciary obligations and according to law, that the plaintiffs' equity in the corporation would not be diluted by the diversion of corporate assets to other companies, and that plaintiffs would have a reasonable opportunity to realize on their equity in the companies; that plaintiff Malcolm Lowder had a reasonable expectation based on working with the corporations since 1955 that he would have continued employment and a position and compensation reasonably proportionate to his ownership in the companies and his training and experience; and that plaintiffs' reasonable expectations were frustrated through no fault of theirs because Horace Lowder misappropriated corporate opportunities of All Star Mills. The court further found that Horace Lowder had exercised complete control over the corporations since his father's death in 1970, had refused to allow plaintiff Malcolm Lowder a position of more authority or participation after their father's death, handled tax claims against the companies without consulting counsel, managed the companies without consulting other shareholders, directed operations toward companies in which he had larger interests, issued treasury stock to himself without consulting other stockholders, that other shareholders had exhibited animosity toward plaintiff in the litigation, and that it would be difficult if not impossible for the affairs of the companies to be conducted in such a way that plaintiff might realize his reasonable expectations. G.S. 55-125(a)(4), G.S. 55-125.1.

APPEAL by defendants and intervening defendants from *Mc-Kinnon, Judge*. Judgments entered 25 January 1984 and 30 April 1984 in Superior Court, STANLY County. Heard in the Court of Appeals 19 April 1985.

Lowder v. All Star Mills, Inc.

This is a shareholder derivative action brought by plaintiffs on behalf of All Star Mills, Inc. (Mills) and Lowder Farms, Inc. (Farms). They alleged, *inter alia*, that defendant Horace Lowder, as an officer and director of Mills and Farms, breached fiduciary duties by misappropriating corporate opportunities of Mills and Farms through the formation and operation of corporations owned or controlled by defendant Horace Lowder: All Star Hatcheries, Inc. (Hatcheries), All Star Foods, Inc. (Foods), and All Star Industries, Inc. (Industries). At the conclusion of a three week long trial, the jury found that defendant Horace Lowder misappropriated corporate opportunities of Mills by the formation of Hatcheries, Foods and Industries. It also found that these claims were not barred by the statute of limitations. The superior court entered judgment in accordance with the jury's verdict, and impressed a constructive trust upon the assets of Hatcheries, Foods and Industries. The court subsequently entered an order making permanent a temporary receivership instituted 2 February 1979 and requiring the liquidation and dissolution of Mills, Farms, and Consolidated Industries.

*Moore, Van Allen, Allen & Thigpen, by Jeffrey J. Davis and Randel E. Phillips, for plaintiffs.*

*Boyce, Mitchell, Burns & Smith, P.A., by Lacy M. Presnell, III, for defendants.*

*Hopkins, Hopkins & Tucker, by William C. Tucker, for intervening defendants.*

JOHNSON, Judge.

I

All Star Mills, Inc. was formed in 1934 as Southern Flour Mills, Inc. by ancestors of the current individual parties. It engaged primarily in the business of flour and animal feed production and also operated a small egg packing facility. In 1955, the name of the corporation was changed to its current name, All Star Mills, Inc. The stock of All Star Mills, Inc. is owned by the parties as follows:

| | |
|---|---|
| 28.7% (505 shares) | Plaintiffs Malcolm Lowder and his two sons, Mark and Dean |

| | |
|---|---|
| 29.8% (523 shares) | Defendant W. Horace Lowder, his wife and children |
| 27.1% (477 shares) | Intervening defendant Lois Hudson, her husband and children |
| 11.9% (210 shares) | Intervening defendant David P. Lowder |

On 9 November 1950, Lowder Farms was incorporated to engage in the production of eggs, which it sold to Mills for resale. Its stock is owned by the parties as follows:

| | |
|---|---|
| 31.8% (500 shares) | All Star Mills, Inc. |
| 12.1% (190 shares) | Plaintiff Malcolm Lowder |
| 12.1% (190 shares) | Defendant Horace Lowder |
| 12.1% (190 shares) | Intervening defendant Lois Hudson |
| 18.4% (290 shares) | Intervening defendant David Lowder and his family |

All Star Hatcheries, originally called All Star Mills, Hatchery Division, Inc., was incorporated 1 June 1959 at the impetus of defendant Horace Lowder to engage in the business of hatching eggs. Hatcheries' stock is owned 50% by defendant Horace Lowder and 50% by defendant Horace Lowder's wife.

In 1961, a decision was made to have Mills transfer its egg production business to All Star Foods, Inc. (Foods), which had been incorporated in 1959 to engage in the canning of chickens. At that time Horace Lowder owned all of Foods' stock. When egg production was transferred to Foods, additional stock was issued to Hatcheries and Mills, causing Hatcheries to own 49%, Mills to own 49% and Horace Lowder to own 2%, of Foods' stock. Because Horace Lowder and his wife owned Hatcheries, Horace Lowder effectively owned 51% of Foods' stock.

Shortly after the formation of Hatcheries, Horace Lowder became interested in purchasing approximately 15,000 acres of land in Hyde County, which he desired to purchase for Hatcheries. His father, who was instrumental in the formation of Mills, however, insisted that the land be purchased by Foods. All Star Industries, Inc. (Industries), which had been formed in 1961 to assist the other companies with financing, was called upon to refinance an existing debt secured by a deed of trust on the Hyde County land. Horace Lowder owns 100% of the stock of Industries.

Also, early in the 1960's, Horace Lowder became interested in purchasing a farm in Montgomery County to build poultry houses for breeders to produce eggs for hatching. Horace wanted to purchase the farm for Hatcheries, but his father, W. A. Lowder, wanted the farm to be purchased by his three children. For this purpose, W. A. Lowder formed Consolidated Industries (Consolidated) and sold thirds of stock in this corporation to each of his three children: plaintiff Malcolm Lowder, defendant Horace Lowder and intervening defendant Lois Hudson. Consolidated leased the farm to Hatcheries, which built poultry houses and placed cattle on the farm.

As noted above, Mills was founded by the fathers, brothers or grandfathers of the individual parties. From the mid-1930's to his death in 1970, W. A. Lowder primarily managed Mills. Horace Lowder began to work for Mills in 1951. By the late 1950's, Horace began to exert more influence over the management of the corporations. As early as 1953, Horace Lowder signed Lowder Farms income tax returns. Upon the death of his father in 1970, Horace Lowder assumed complete control over the management of the companies.

In the early 1960's, the Internal Revenue Service (IRS) began investigating the tax affairs of Mills and Farms. As a result of these investigations, Horace Lowder was ultimately convicted of income tax violations in 1973. Horace Lowder represented the companies without counsel at these hearings. After his appeals were exhausted, Horace Lowder was imprisoned in 1975 for one year. Just before his incarceration, Horace Lowder decided to discontinue the feed production business of Mills and transfer it to Foods, which leased Mills' facilities. He also decided to limit the feed production to certain customers, including Farms and Hatcheries. He informed Mr. David Lowder, Mrs. Lois Hudson, and Mr. Malcolm Lowder of these decisions, and they acquiesced in them.

Prior to his death, W. A. Lowder had told Malcolm that, upon his death, he wanted Malcolm to move his office from the egg production facilities back to the main office at the mill and to assist Horace in the management of the companies. Malcolm attempted to move to the mill office after his father's death, but Horace turned him away, saying Malcolm was not needed there and that

he should return to the egg plant at Foods. Malcolm returned to the egg plant.

Prior to the time Horace Lowder went to prison in 1975, Malcolm Lowder had made no inquiry as to the ownership of the several companies or their financial status or made no demand or request for dividends or financial statements. No dividends had been distributed in any of these companies since the late 1950's. No shareholders' meetings had been held at these companies since the late 1950's or early 1960's.

In 1975, while reviewing documents related with Horace's criminal appeal, Malcolm learned for the first time of the nature and extent of his brother's ownership of the various companies. He learned that Horace and his wife not only owned all of the stock of Hatcheries, but that Horace owned all of the stock of Industries. He also learned that Foods was not a wholly owned subsidiary of Mills, as he had thought, but was owned 49% by Mills, and 51% by Horace, directly or through Hatcheries.

In 1978, after Horace had been released from prison, the IRS renewed its efforts to collect taxes from the companies. Horace again appeared before the Tax Court and attempted to represent the companies without legal representation. Malcolm attended these hearings and learned new information. Malcolm thereafter in that same year made demand on Horace, pursuant to G.S. 55-38, to inspect the books and records of Mills, Farms, and Consolidated. In response to this demand, Horace gave Malcolm income statements and balance sheets for the previous ten years, but failed to furnish plaintiff complete access to the books and records of the companies.

Three days after Malcolm made demand to inspect the books and records, defendant Horace Lowder issued to himself 1,435 shares of Mills' treasury stock and 460 shares of Farms' treasury stock. By virtue of these transactions, Horace Lowder attempted to increase his share of All Star Mills from 29.8% to 61.3% and of Lowder Farms from 12.1% to 32%.

As a result of these actions, plaintiff filed this lawsuit in January 1979. Immediately upon the filing of this action, Horace fired Malcolm from his employment.

## II

[1]   The first issue we address is the statute of limitations issue. The availability of the statute of limitations defense in shareholder derivative actions is dependent upon the nature of the claim being asserted. R. Robinson, North Carolina Corporation Law and Practice, sec. 14-11 (3d ed. 1983). The present action was tried as one to impose a constructive trust on corporate assets arising out of a breach of fiduciary duty. Despite defendants' arguments to the contrary, it has repeatedly been held that a ten year statute of limitations applies to such actions. *See Cline v. Cline*, 297 N.C. 336, 255 S.E. 2d 399 (1979); *Fulp v. Fulp*, 264 N.C. 20, 140 S.E. 2d 708 (1965); *Jarrett v. Green*, 230 N.C. 104, 52 S.E. 2d 223 (1949); *Speck v. N. C. Dairy Foundation, Inc.*, 64 N.C. App. 419, 307 S.E. 2d 785 (1983), *reversed on other grounds*, 311 N.C. 679, 319 S.E. 2d 139 (1984). The trial court therefore properly instructed the jury that a ten year statute of limitations applied to this action. In such actions, the statute of limitations begins to run "from the time the trustee disavows the trust and knowledge of his disavowal is brought home to the *cestui que trust*." *Cline v. Cline, supra* at 348, 255 S.E. 2d at 407. Judge McKinnon's instruction to the jury properly applied this principle. It is undisputed that Horace Lowder knew the true facts regarding the ownership of the various companies no later than 1975. There is some question as to whether plaintiffs knew, or should have known, the true facts before then. In any event, the question was for the jury, and defendants' motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were properly denied.

Defendants contend that the court erred in its instructions by failing to instruct the jury that the statute of limitations began to run when the fraud should have been discovered by any officer or director with adverse interests to Horace Lowder and by instructing the jury that the statute of limitations was tolled when Horace took complete control of the corporations. Defendants, however, did not object to these instructions at trial. They are therefore barred from raising them on appeal. Rule 10(b)(2), Rules of Appellate Procedure; *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984); *Durham v. Quincy Mut. Fire Ins. Co.*, 311 N.C. 361, 317 S.E. 2d 372 (1984).

For the same reasons, we reject defendants' contention that the trial court committed prejudicial error by instructing the jury that plaintiffs were "estopped" from bringing this action more than ten years after they knew, or should have known, the true facts. Not only did the defendants not object, they specifically requested the instruction given. They cannot now claim error. *Overton v. Overton*, 260 N.C. 139, 132 S.E. 2d 349 (1963); *Kim v. Professional Business Brokers*, 74 N.C. App. 48, 328 S.E. 2d 296 (1985).

## III

[2]   The next issue is whether the evidence was sufficient to support a verdict that Horace Lowder, as an officer or director of Mills, usurped or misappropriated a corporate opportunity of Mills through the formation and operation of Foods, Hatcheries and Industries. The law in North Carolina regarding the usurpation of corporate opportunities is set forth in *Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E. 2d 551 (1983): A transaction engaged in by a corporate fiduciary on his behalf is not void or voidable if the corporate fiduciary can prove that the transaction was "just and reasonable" to the corporation because it was not an opportunity which the corporation would have wanted. In determining whether a corporate fiduciary has usurped a corporate opportunity, the facts of the particular case must be analyzed to determine whether the opportunity is functionally related to the corporation's business and whether the corporation has an interest or expectancy in the opportunity. In making this determination, several factors may be considered:

> 1) the ability, financial or otherwise, of the corporation to take advantage of the opportunity; 2) whether the corporation engaged in prior negotiations for the opportunity; 3) whether the corporate director or officer was made aware of the opportunity by virtue of his or her fiduciary position; 4) whether the existence of the opportunity was disclosed to the corporation; 5) whether the corporation rejected the opportunity; and 6) whether the corporate facilities were used to acquire the opportunity.

*Id.*, at 310, 307 S.E. 2d at 569.

Defendants concede Mills had the financial ability to take advantage of the opportunities. Mills, of course, was engaging in the businesses which were diverted to companies which Horace Lowder owned or controlled, and corporate facilities of Mills were used in the formation and operation of the various companies. For example, Mills built the building used by Hatcheries and Foods. Hatcheries and Foods also used Mills' employees and Mills paid their salaries. Mills' funds were also used in the formation and operation of Industries, which was formed to finance the purchase of land in Hyde County by Foods. Foods borrowed the money from Industries, which had borrowed the money from Horace Lowder, who had in turn borrowed from Mills, Foods, Hatcheries and Farms. The net result of these transactions was that Horace Lowder, personally and through his 100% ownership of Industries, earned one half of one per cent interest on the deal.

North Carolina recognizes that one may be a *de facto* officer or director of a corporation. *See* R. Robinson, *supra,* secs. 11-8 and 13-2. The evidence tended to show that Horace Lowder signed the income tax returns of Farms as president as early as 1953 and signed the income tax returns of Mills as assistant treasurer as early as 1961; that Horace Lowder had major input into the formation and operation of these companies; and that Horace took over management of the companies in the late 1950's when his father had surgery removing one of his kidneys. The evidence thus supports a finding that Horace was an officer at the time these opportunities arose.

At one time, Mills engaged in the businesses of flour milling, cornmeal milling, feed production, raising broilers, and egg marketing. By 1975, it engaged in no business, except to lease its facilities to businesses owned or controlled by Horace Lowder.

Horace Lowder, at trial, offered explanations for various decisions to show that the transactions were "just and reasonable" to Mills. For example, he explained that Mills got out of the egg marketing business because egg marketing placed Mills in an awkward position with its feed customers. Yet, Foods went from no sales and no business to $2.5 million in sales and a gross profit of more than $380,000 in its first year of operation. Whether or not these explanations were reasonable were for the jury to determine.

We hold the foregoing evidence was sufficient for the jury to infer that Horace Lowder, as an officer or director of Mills, misappropriated corporate opportunities of Mills by the formation or operation of Foods, Hatcheries and Industries.

IV

[3]  Defendants next contend that the judgment entered upon the jury verdict was erroneous because a constructive trust in favor of Mills was placed upon all the assets of Foods, Hatcheries and Industries rather than upon their stock. This contention has no merit. The judgment provided that the balance of the assets of the companies, after the payment of liabilities and the return of shareholders' investment properly proven, belonged to Mills. The practical effect of the court's judgment is the same. Moreover, the jury found that the operation of the companies, and not just their formation, constituted the misappropriation of the corporate opportunities.

V

[4]  We next consider the court's judgment ordering a dissolution and liquidation of the corporations. A superior court has the power to liquidate the assets and business of a corporation in an action by a shareholder when it is established that "(l)iquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder." G.S. 55-125(a)(4). In *Meiselman v. Meiselman, supra,* the Court set out the analysis a superior court should employ in determining whether to order dissolution or other relief under G.S. 55-125(a)(4): The superior court must first identify the "rights and interests" a complaining shareholder has in the corporation. The Supreme Court defined these rights and interests as including the "reasonable expectations" a complaining shareholder has in the corporation. These reasonable expectations are to be determined by examining the entire history of the participants' relationship. That history includes the reasonable expectations created at the inception of the relationship, and those which evolved during the course of the parties' relationship. The interests and views of the other participants must be considered in determining these reasonable expectations. In order for a plaintiff's expectations to be reasonable, they must be known or assumed by the other shareholders and concurred in by them. In sum, plaintiff must show that: (1) he had one or more substantial

reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was not plaintiff's fault and was in large part beyond plaintiff's control; and (4) under all the circumstances of the case, plaintiff is entitled to some form of equitable relief.

Once the plaintiff has made this showing the superior court must then determine whether some form of relief is reasonably necessary for the protection of the plaintiff's rights and interests. The court may order liquidation pursuant to G.S. 55-125(a)(4) or it may order the relief allowed by G.S. 55-125.1. The determination of relief is within the superior court's equitable discretion.

Among the rights and interest that the Court in *Meiselman* said that a shareholder has in a close corporation are secure employment, fringe benefits which flow from his association with the corporation, and meaningful participation in the management of the family business, in addition to the traditional shareholder rights, such as the right to notice of stockholders' meetings, the right to vote cumulatively, the right of access to the corporate offices and to corporate financial information, and the right to compel the payment of dividends. In the present case, the superior court found and concluded that plaintiffs, as shareholders of All Star Mills, had reasonable expectations that the companies would be managed by the controlling officer in accordance with his fiduciary obligations and according to law; that the plaintiffs' equity in the corporation would not be diluted by the usurpation of corporate opportunities or the diversion of corporate assets to other companies; and that plaintiffs would have a reasonable opportunity to realize on the value of their equity in the companies. The court further found and concluded that plaintiff Malcolm Lowder, as a shareholder of Mills, Farms and Consolidated, had a reasonable expectation that he would have "continued employment and a position and compensation reasonably proportionate to his ownership in the companies, and his training and experience"; and that plaintiffs' reasonable expectations were frustrated, through no fault of theirs, because as the jury determined, Horace Lowder misappropriated corporate opportunities of All Star Mills. As further support of its decision to liquidate the corporations, the superior court cited Horace Lowder's excercise of complete control and domination of the corporations since his father's death in 1970, his refusal to allow Malcolm Lowder a posi-

tion of more authority or participation after their father's death, his handling of tax claims against the companies without counsel, his management of the companies without consulting other shareholders, his direction of operations toward companies in which he had larger interests, and his issuance of treasury stock to himself without consulting other shareholders. Noting that the other shareholders had exhibited animosity towards Malcolm Lowder during this litigation, had aligned themselves with Horace Lowder in this litigation, and had adopted a corporate resolution requiring the Board of Directors to return to Horace Lowder any assets lost by him as a result of the litigation, the Court found and concluded that the majority of the stockholders would align themselves in opposition to plaintiffs in any future operation of the corporations and that it would be difficult, if not impossible, for the affairs of the companies to be conducted in such a way that plaintiff might realize his reasonable expectations. The court concluded that the only way plaintiffs' reasonable expectations could be protected was through the liquidation and dissolution of Farms and Consolidated.

Defendants except to the superior court's finding of fact that Malcolm Lowder had a reasonable expectation of continuous employment as being unsupported by the evidence. The record, however, shows Malcolm Lowder began working for Mills in 1955 and worked continuously for either Mills, Farms, Hatcheries or Foods until he was abruptly fired by Horace in 1978. It was reasonable for the court to conclude that Malcolm Lowder, as a shareholder, had a reasonable expectation that his employment would continue. His working for all those years was sufficient notice to the other shareholders that he had a reasonable expectation of continued employment. Indeed, they sought to punish Malcolm and frustrate his expectations of employment by passing a corporate resolution not to rehire Malcolm in any capacity.

Defendants also except to other findings of fact as being unsupported by the evidence. Even if it is assumed, *arguendo*, that these findings were unsupported by the evidence, the remaining findings support the court's judgment. We hold the court's findings of fact and conclusions of law support its order of liquidation and dissolution. We can find no abuse of discretion by the court in ordering liquidation and dissolution of Mills, Farms and Consolidated.

VI

Plaintiffs have also brought forward cross-assignments of error, but because of our disposition of this case, we need not consider them.

In summary, we find no error in the trial and affirm the judgment of liquidation and dissolution.

No error.

Judges ARNOLD and EAGLES concur.