Brewster v. Powell Bail Bonding, Inc., 2020 NCBC 16.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 4462

RAUL S. BREWSTER,

          Plaintiff,

v.

POWELL BAIL BONDING, INC.;
LARRY JACK POWELL; JOHN E.
LEONARD, JR.; and CYNTHIA LEE,

          Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

1. This action for breach of fiduciary duty and judicial dissolution arises out of a dispute among the shareholders of a closely held bail bonding company. The plaintiff, Raul Brewster, is a minority shareholder and former employee of Powell Bail Bonding, Inc. ("PBB"). He alleges that he was marginalized by other shareholders—namely defendants Larry Jack Powell, John Leonard, and Cindy Lee—and then wrongfully fired. The defendants deny this and have moved for summary judgment on all claims. (*See* ECF No. 41.) For the reasons stated below, the Court **GRANTS** the motion in part and **DENIES** it in part.

> *Atlantic Coast Law, by Mark J. Ihnat, and The Law Office of G. Kurt Thompson, Jr., by G. Kurt Thompson, Jr., for Plaintiff Raul S. Brewster.*
>
> *Shipman & Wright, LLP, by W. Cory Reiss, for Defendants Powell Bail Bonding, Inc., Larry Jack Powell, John E. Leonard, Jr., and Cynthia Lee.*

Conrad, Judge.

# I.
# BACKGROUND

2. The Court does not make findings of fact in ruling on motions for summary judgment. The following background, describing the evidence and noting relevant disputes, is therefore intended only to provide context for the Court's analysis and ruling.

3. Brewster joined PBB as an employee in 1997. (*See* Defs.' Ex. D at 13:9–12, ECF No. 42.5 ["Brewster Dep."].) PBB was then and is now a small, closely held business. Brewster says that he soon became "the foundation of the company" due to his promotional efforts and adroit handling of client accounts. (Brewster Dep. 24:15–16; *see also* Brewster Dep. 23:20–25:13.) Despite doubts about PBB's management, he stayed on through an organizational shakeup and became a shareholder with a 20% interest. (*See* Brewster Dep. 23:1–10, 130:11–131:22.) Six others held the remaining shares: Powell and his wife,[1] each with a 20% interest; Lee and her husband, each with a 10% interest; and Leonard and his wife, each with a 10% interest. (*See* Defs.' Ex. A at 2, ECF No. 42.2.)

4. It is unclear from the record when Brewster acquired his shares (he dates the acquisition to both 2005 and 2009 in his deposition), but that discrepancy doesn't matter for present purposes. By February 2009, he was counted as an owner, officer, and director of PBB. (*See* Defs.' Ex. A.) All seven shareholders attended an "organizational meeting" that same month. (Defs.' Ex. A at 1.) Sitting as the board of directors, the shareholders adopted bylaws, appointed officers, delegated

---

[1] Powell's wife died in 2016, after the events at issue here. (*See* Defs.' Ex. O, ECF No. 42.16.)

responsibility for annual budgeting, approved benefits for employed and retired corporate members, established a grievance process for terminated employees, and voted that "no corporate member could sell or transfer their shares to anyone outside the corporation." (Defs.' Ex. A at 3.) The board also approved a motion by Brewster that all buff accounts—trust accounts used to pay forfeited bonds—would be owned by PBB rather than each individual bond agent. (*See* Defs.' Ex. A at 4.) Every vote was unanimous.

5. Brewster later grew frustrated with his fellow shareholders, but it is difficult to piece together the events that led to his dissatisfaction. Brewster's deposition testimony contains few dates and details. Written evidence is also spotty. The record contains no e-mails or other electronic communications among the shareholders. Nor do the parties' filings include financial records or other business records reflecting transactions made by PBB during this period. Apart from the minutes of the February 2009 meeting, the few documents that report shareholder or director votes are clustered in late 2015. Adding to the confusion, Brewster's brief includes a statement of facts drawn from the unverified allegations of his complaint rather than competent evidence in the record. (*See* Pl.'s Mem. in Opp'n 2–3, ECF No. 46 ["Opp'n"].)

6. In general, it appears that Brewster believed the other "active owners"— Powell, Lee, and Leonard—treated him dismissively or with hostility. (Brewster Dep. 62:23–25.) On day-to-day tasks, Brewster felt that he took the laboring oar while the others idled. (*See, e.g.*, Brewster Dep. 134:5–8.) He testified that Powell, Lee, and

Leonard excluded him from financial and managerial matters. (*See* Brewster Dep. 29:13–15, 29:23–30:8, 31:15–32:1.) And he further testified that he was excluded from PBB's process for counting its agents' collections; left off PBB's bank accounts; and denied access to the company's safe, financial records, and buff account data. (*See* Brewster Dep. 27:11–14, 30:3–14, 31:15–32:1, 45:4–11, 91:5–18.)

7. In September 2015, Brewster put his frustrations on paper, sending a letter intended for Powell, Lee, and Leonard. (*See* Brewster Dep. 92:5–25; *see also* Defs.' Ex. N, ECF No. 42.15.[2]) After listing his contributions to PBB, Brewster observed "that as an owner I am not given the full ownership rights as my other partners." (Defs.' Ex. N at 1.) He closed with a proposition:

> I want to step down and begin my own path. We can decide, as partners, how to proceed from here. I can stay on the payroll, or you can buy me out, whatever is best for you and the company. . . . Regarding to [sic] how you would like to dissolve my ownership interest in the business, I am open to any opinion or input.

(Defs.' Ex. N at 1.) Reading this as a resignation letter, PBB put Brewster on paid leave. (*See* Pl.'s Ex. B at 1, ECF No. 47.2.) Brewster has since testified that he "never quit nor consented to the termination of his employment." (Brewster Dep. 64:8–11.) At any rate, within weeks, Brewster was no longer working for PBB. (*See* Brewster Dep. 64:20–24, 65:5–23, 92:23–25.)

8. Not long after, Brewster was removed as an officer and director. In October 2015, the shareholders assembled for a special meeting and elected Powell, Lee, and Leonard as the sole directors of PBB. (*See* Defs.' Ex. F, ECF 42.7.) The shareholders

---

[2] The copy attached to Defendants' motion is faded. A more legible copy, which appears to have the same content, is attached as Exhibit B to the complaint.

also voted to adopt new corporate bylaws ("New Bylaws"), ostensibly because the original bylaws had been lost. (*See* Defs.' Ex. F; *see also* Defs.' Ex. C, ECF No. 42.4.) Brewster was present but abstained from both votes. (*See* Defs.' Ex. F.) In November, the shareholders met again and voted to adopt a Minority Shareholder Buy-Sell Agreement ("Shareholder Agreement") over Brewster's dissent. (*See* Defs.' Ex. I, ECF No. 42.10; *see also* Defs.' Ex. J, ECF No. 42.11.)

9. Negotiations over Brewster's future with PBB went nowhere. The company offered to buy his shares, but he rejected it and counteroffered. (*See* Pl.'s Ex. B; *see also* Brewster Dep. 100:25–101:25.) Brewster also made a demand to inspect corporate records under N.C.G.S. § 55-16-02. (*See* Pl.'s Ex. B at 4, 5.) PBB's response to that demand is not in the record. When no settlement ensued, Brewster filed a lawsuit in early 2016 that he later voluntarily dismissed without prejudice.

10. This lawsuit followed in late 2017. Three claims for relief remain at issue.[3] Brewster claims that Powell, Lee, and Leonard were controlling shareholders who owed him a fiduciary duty as a minority shareholder and breached that duty. (*See* Compl. ¶ 115, ECF No. 3.) Among other things, Brewster alleges that he was excluded from PBB's financial affairs and that the New Bylaws and Shareholder Agreement were designed to encumber his rights as a minority shareholder. (*See* Compl. ¶¶ 48, 76.) He pairs the claim for breach of fiduciary duty with a related claim for civil conspiracy against Powell, Lee, and Leonard. (*See* Compl. ¶¶ 119–21.) Last,

---

[3] The Court dismissed Brewster's claim for unfair or deceptive trade practices in an earlier opinion. *See Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *15–19 (N.C. Super. Ct. July 26, 2018).

Brewster seeks judicial dissolution of PBB under N.C.G.S § 55-14-30, claiming that the company and the other shareholders have frustrated his reasonable expectations, including his expectation of continued employment. (*See* Compl. ¶¶ 87, 107–11.)

11. Powell, Lee, Leonard, and PBB move for summary judgment on each claim. (*See* ECF No. 41.) Their motion has been fully briefed. The Court held a hearing on June 10, 2019, at which all parties were represented by counsel. The motion is now ripe for determination.

## II.
## ANALYSIS

12. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-mov[ant]," taking the nonmovant's evidence as true and drawing inferences in its favor. *Furr v. K-Mart Corp.*, 142 N.C. App. 325, 327, 543 S.E.2d 166, 168 (2001) (internal citation and quotation marks omitted).

13. The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted). If the moving party carries this burden, "it becomes incumbent upon the opposing party to take affirmative steps to defend his position by proof of his own." *Lowe v. Bradford*, 305 N.C. 366, 370, 289 S.E.2d 363, 366 (1982). The opposing party "may not rest upon the mere allegations

or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins. Co.*, 356 N.C. at 579, 573 S.E.2d at 124. Thus, a "motion for summary judgment allows one party to force his opponent to produce a forecast of evidence which he has available for presentation at trial to support his claim or defense." *Dixie Chem. Corp. v. Edwards*, 68 N.C. App. 714, 717, 315 S.E.2d 747, 750 (1984).

A. Breach of Fiduciary Duty

14. The Court begins with Brewster's claim for breach of fiduciary duty. The elements of this claim are the existence of a fiduciary duty, a breach of that duty, and injury proximately caused by the breach. *See, e.g., Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013); *Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at *23 (N.C. Super. Ct. Jan. 27, 2017).

15. Powell, Lee, and Leonard contend that Brewster cannot establish any of the three elements. The existence of a fiduciary duty depends on Brewster's allegation that Powell, Lee, and Leonard were PBB's "majority and controlling shareholders." (Compl. ¶ 115.) They deny the allegation, arguing that it has been refuted by the testimony of PBB's other shareholders. (*See* Defs.' Mem. in Supp. 8–13, ECF No. 42 ["Mem. in Supp."].) Likewise, they contend that Brewster abandoned or contradicted his own allegations of breach and injury during his deposition. (*See* Mem. in Supp. 13–17.)

16. It was Brewster's responsibility to rebut these arguments by identifying the evidence that supports his claim and articulating how that evidence creates a genuine

issue of material fact for trial. But if he has supporting evidence, he hasn't cited it. His briefing on this claim includes a single record citation—an immaterial reference to his deposition testimony. (*See* Opp'n 7.) This is a violation of Business Court Rule 7.5, which requires parties not only to cite supporting material but also to give "a pinpoint citation to the relevant page of the supporting material whenever possible." It is not the Court's "job to sift through the record and make [Brewster's] case for him." *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010).[4]

17. Furthermore, the Court must take the record as it is, not as it could be. At times, Brewster alludes to documents outside the record and reverts to the allegations in his unverified complaint. (*See, e.g.*, Opp'n 7, 10.) Both are off limits. *See, e.g.*, *Cole v. Bonaparte's Retreat Prop. Owners' Ass'n*, 259 N.C. App. 27, 39, 815 S.E.2d 403, 412 (2018) (refusing to consider documents outside the record on summary judgment); *Rankin v. Food Lion*, 210 N.C. App. 213, 220, 706 S.E.2d 310, 315–16 (2011) (directing trial courts "not [to] consider an unverified pleading when ruling on a motion for summary judgment" (citation and quotation marks omitted)).

---

[4] This is, of course, the universal rule in the federal courts. *See, e.g.*, *Carr v. Air Line Pilots Ass'n Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) ("Neither we nor the district court have a duty to sift through the record in search of evidence to support the nonmovant's opposition to summary judgment." (citation and quotation marks omitted)); *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("It was not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." (citation and quotation marks omitted)); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992) ("Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."); *see also Ellison v. Alexander*, 207 N.C. App. 401, 405, 700 S.E.2d 102, 106 (2010) ("Although we are not bound by federal case law, we may find their analysis and holdings persuasive." (citation and quotation marks omitted)).

18. In short, Brewster's response isn't adequate to the task. For each claim element, the gaps are glaring.

19. To begin, Brewster no longer relies on the rule that "the majority stockholder of a corporation owes fiduciary duties to the minority stockholders." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 616, 821 S.E.2d 729, 737 (2018) ("*Corwin II*"). The undisputed evidence shows that Powell, Lee, and Leonard held an aggregate interest of only 40 percent during the relevant timeframe. (*See* Defs.' Ex. A at 2.) Brewster concedes as much. (*See* Opp'n 6.)

20. Rather, Brewster presses a theory our Supreme Court has yet to adopt: that minority shareholders who exercise actual control over the corporation owe a fiduciary duty to the other shareholders. *See Corwin II*, 371 N.C. at 616, 821 S.E.2d at 737.[5] In jurisdictions that have adopted the theory, the standard required to show actual control is demanding. It "can only be met where stockholders who, although lacking a clear majority, have such formidable voting and managerial power that they, as a practical matter, are no differently situated than if they had majority voting control." *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 992 (Del. Ch. 2014) (citation and quotation marks omitted). The shareholders must not only

---

[5] In an earlier decision, the Court held that Brewster had adequately stated a claim for relief based on this theory. *See Brewster*, 2018 NCBC LEXIS 76, at \*10–15. At that time, our Court of Appeals had held "that a minority shareholder exercising actual control over a corporation may be deemed a 'controlling shareholder' with a concomitant fiduciary duty to the other shareholders." *Corwin v. British Am. Tobacco PLC*, 251 N.C. App. 45, 51, 796 S.E.2d 324, 330 (2016), *rev'd*, 371 N.C. 605, 821 S.E.2d 729 (2018). The Supreme Court has since reversed the Court of Appeals's decision and expressly reserved judgment as to whether a controlling minority shareholder owes a duty to other shareholders. *See Corwin II*, 371 N.C. at 616, 821 S.E.2d at 737.

possess control but also use it in a way "that prevents a company's directors from freely exercising their judgment in determining whether or not to approve and recommend a transaction." *Corwin II*, 371 N.C. at 618, 821 S.E.2d at 738 (citation, quotation marks, and alteration omitted). Mere "leverage over the board of directors is not enough." *Id.* at 617, 821 S.E.2d at 738.

21. Even if this were the law in North Carolina (which the Court need not decide), the evidence for the period before October 2015 doesn't measure up. It is undisputed that PBB had a seven-member board of directors during that time. (*See* Defs.' Ex. A.) As three of the seven, Powell, Lee, and Leonard were not a majority. Nor is there evidence that the other four were prevented from freely exercising their own judgment: one was Brewster; another was Powell's wife, now deceased; and the last two submitted affidavits in which they deny having felt "pressure" or being "obligated to vote with or against any other person," (Defs.' Ex. L ¶ 5, ECF No. 42.13; Defs.' Ex. M ¶ 6, ECF No. 42.14; *see also* Defs.' Ex. M ¶ 8).

22. In conclusory fashion, Brewster contends that the board voted "in a lockstep march" with Powell, Lee, and Leonard. (Opp'n 7.) But he cites no evidence in support. It is also entirely unclear which votes were problematic. Brewster doesn't specify them, and the record includes only one set of minutes from this time frame—a February 2009 meeting during which the board, including Brewster, voted unanimously on every issue. (*See* Defs.' Ex. A.) Given Brewster's failure to cite any evidence or to identify any offending transactions, no reasonable jury could conclude that Powell, Lee, and Leonard exercised actual control over PBB before October 2015.

23.     Beginning in October 2015, Powell, Lee, and Leonard became PBB's only directors.  Assuming a fiduciary duty arose at that point (which, again, the Court need not decide), Brewster has not put forward evidence of a breach.  As Powell, Lee, and Leonard note, (*see* Mem. in Supp. 13), Brewster testified that the actions giving rise to his claim were limited to the allegations in paragraph 48 in his complaint, (*see* Brewster Dep. 29:19–22).  The testimony is surprising because paragraph 48 does not refer to events after October 2015, such as the adoption of the New Bylaws or the Shareholder Agreement.  Perhaps Brewster made a mistake, but his opposition brief does not acknowledge, explain, or attempt to withdraw the testimony.

24.     Regardless, Brewster gives no evidence to support any alleged breach.  On a charitable reading, his brief includes three arguments.  First, he contends in one sentence that the New Bylaws and the Shareholder Agreement encumbered his rights, yet he does not cite either document, cite any other evidence, identify the disagreeable provisions, or even articulate how his rights were encumbered.  (*See* Opp'n 7–9.)  In fact, Brewster testified that he has not read the Shareholder Agreement and could not identify any provisions that targeted his rights.  (*See* Brewster Dep. 119:2–121:14.)  Second, Brewster asserts generally—without citation and based only on his "reasonable belief"—that Powell, Lee, and Leonard "mismanaged" PBB and "misappropriated" its funds.  (Opp'n 9.)  And third, he contends that PBB refused to comply with his prelitigation demand to inspect corporate records, once more citing no evidence that the company or any of the other

shareholders denied his demand.[6] (*See* Opp'n 8.) Each argument is undeveloped, unexplained, and unsupported. There are no genuine issues of fact for a jury to decide.

25. So too for the element of injury. Powell, Lee, and Leonard return to Brewster's deposition testimony in support. (*See* Mem. in Supp. 15–17.) Asked to articulate his injuries or damages, Brewster could not do so for any of the breaches alleged in his complaint. (*See* Brewster Dep. 31:3–7, 32:13–33:19, 35:10–14, 43:1–10, 47:8–18, 49:5–50:3, 52:6–8, 70:13–16, 121:9–14, 138:5–13.) Without attempting to explain or revise this testimony, Brewster accuses Powell, Lee, and Leonard of "hiding the ball" by refusing to provide needed financial records. (Opp'n 9.) This is unpersuasive. Brewster had more than seven months to complete discovery. He did not raise any discovery disputes or move to compel production of additional documents or witnesses. If Brewster means to suggest that the defendants have hidden or destroyed evidence, he has not fairly raised such a serious charge.

26. Brewster's other damages arguments are makeweight. Without citation, he contends that his skills "as a bail bondsman are unique to the industry and not accommodating for crossover into other industries." (Opp'n 10.) The argument lacks evidence and has to do with the termination of Brewster's employment, which he has not alleged as a basis for his claim for fiduciary duty. A final damages argument is that "the company has reported extensive losses" as shown by "K-1 documents

---

[6] This argument is puzzling for another reason. By statute, a qualified shareholder may petition a court for an order compelling the inspection and copying of corporate records if the corporation has improperly denied the shareholder's request. *See* N.C.G.S. § 55-16-02. At no point has Brewster asserted a claim of that type.

produced by the Defendants." (Opp'n 10.) These documents are not in the record and may not be considered.

27. At summary judgment, arguments must derive from evidence, and allegations must yield to proof. Brewster has delivered neither. Having failed to cite any evidence, Brewster has not shown any genuine issue of material fact for a jury to decide. Accordingly, the Court grants summary judgment as to Brewster's claim for breach of fiduciary duty.

### B. Conspiracy

28. Summary judgment is also appropriate as to Brewster's conspiracy claim. "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). Here, the Court has determined that Brewster has no viable underlying claim for breach of fiduciary duty. Thus, the claim for conspiracy "must also fall." *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007) (affirming summary judgment as to conspiracy claim); *see also Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333–34 (2011) (same).

### C. Judicial Dissolution

29. Next, the Court turns to Brewster's claim for judicial dissolution. A trial court may dissolve a corporation when "liquidation is reasonably necessary for the

protection of the rights or interests of the complaining shareholder." N.C.G.S. § 55-14-30(2)(ii). The complaining shareholder must prove that

> (1) he had one or more substantial reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was without fault of plaintiff and was in large part beyond his control; and (4) under all of the circumstances of the case, plaintiff is entitled to some form of equitable relief.

*Meiselman v. Meiselman*, 309 N.C. 279, 301, 307 S.E.2d 551, 564 (1983).

30. At issue is whether Brewster had a reasonable expectation of continued employment with PBB. (*See* Compl. ¶¶ 87, 108, 109.) Powell, Lee, and Leonard argue that his expectation of continued employment, if he had one, was privately held and not known or assumed by the other shareholders. (*See* Mem. in Supp. 5, 20–21.) They note that no written document memorializes Brewster's expectation of continued employment. (*See* Mem. in Supp. 5, 20.) In addition, they submit affidavits in which other shareholders deny that Brewster ever conveyed his expectation to them or that they shared it. (*See* Defs.' Ex. E ¶¶ 5–8, ECF No. 42.6; Defs.' Ex. L ¶¶ 10, 12–14; Defs.' Ex. M ¶¶ 13–16; Defs.' Ex. P ¶¶ 4–7, ECF No. 42.17.)

31. Once again, Brewster's brief is far from thorough. On this claim, though, he does just enough. Citing his deposition testimony, Brewster contends that he was employed by PBB for over twenty years and that PBB's principals made him a shareholder for the very purpose of retaining him as an employee. (*See* Opp'n 12.) Indeed, Brewster testified that the stock offer was a key reason that he agreed to stay with PBB and turn down a competing employment offer. (*See* Brewster Dep. 23:1–9.) As the Court of Appeals has observed, a shareholder's "reasonable expectations are to be determined by examining the entire history of the participants'

relationship." *Lowder v. All Star Mills, Inc.*, 75 N.C. App. 233, 242, 330 S.E.2d 649, 655, *cert. denied*, 314 N.C. 541, 335 S.E.2d 19 (1985). A jury could conclude that Brewster's lengthy employment with PBB "was sufficient notice to the other shareholders that he had a reasonable expectation of continued employment." *Id.* at 244, 330 S.E.2d at 656.

32. In a footnote, Powell, Lee, and Leonard also argue that any frustration of Brewster's rights was his "own doing because he instigated his separation by announcing a desire to resign, which the company accepted." (Mem. in Supp. 22 n.10.) The Court need not and does not consider this perfunctory, one-sentence argument with no supporting citation, other than to note that Brewster denies announcing his resignation. (*See* Brewster Dep. 64:8–11.) To the extent Powell, Lee, and Leonard expand the argument in their reply brief, it comes too late.

33. Finally, the reply brief also suggests that the Court should deny relief in its discretion, presumably for equitable reasons. It would be premature to make that determination on this record and without more complete argument from both sides.

34. Accordingly, the Court denies the motion for summary judgment as to the claim for judicial dissolution.

III.
CONCLUSION

35. For the reasons set forth above, the Court **GRANTS** the motion for summary judgment as to Brewster's claims for breach of fiduciary duty and civil conspiracy. These claims are **DISMISSED** with prejudice.

36. The Court **DENIES** the motion as to the claim for judicial dissolution.

37.    Within seven days of this Order, counsel for the parties shall meet and confer as to the anticipated length of trial and submit a joint status report via e-mail to the law clerk assigned to this case.

**SO ORDERED**, this the 11th day of March, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases